**In the Matter of PROOF OF THE PUDDING, INC., d/b/a Proof of the Pudding, Debtor.**

**In the Matter of Frank J. VALENZA, Debtor.**

**Bankruptcy Nos. 79 B 10332 ER, 79 B 10333 ER.**

United States Bankruptcy Court, S. D. New York.

April 30, 1980.

---

Sherman & Citron, New York City, for debtors.

Finkel, Goldstein & Berzow, New York City, for Creditors' Committee of Melting Moments, Inc.

Irving H. Picard, United States Trustee, New York City.

## OPINION CONCERNING THE APPLICATION FOR THE RETENTION OF COUNSEL FOR CREDITORS' COMMITTEE

EDWARD J. RYAN, Bankruptcy Judge.

Three distinct but related Chapter 11 cases—Melting Moments, Inc., d/b/a The Palace (No. 79 B 10331), Proof of the Pudding, Inc., d/b/a Proof of the Pudding (No. 79 B 10332), and Frank J. Valenza (No. 79 B 10333)—were commenced on December 20, 1979, by the filing of separate voluntary petitions by the respective debtors. Separate and distinct creditors' committees were appointed in each case. By order dated January 22, 1980, the committee of unsecured creditors for Melting Moments, Inc., was authorized to employ Finkel, Goldstein & Berzow as its counsel. Now come before this court two separate applications seeking authorization to employ Finkel, Goldstein & Berzow as attorneys for the respective creditors' committees of Proof of the Pudding, Inc., and Frank J. Valenza.

■ The office of the United States Trustee filed a "Statement"[1] in connection with the respective applications of the unsecured creditors' committees concerning the retention of the law firm of Finkel, Goldstein & Berzow (FG&B). The concern of the United States Trustee seems to arise out of a "potential conflict of interest" which the United States Trustee fears might impede the ability of one law firm to give independent and disinterested advice to its respective clients. According to the United States Trustee, an examination of the three petitions and the subsequently filed schedules and statement of affairs for each debtor shows that there were (and are)

---

1. See, Interim Bankruptcy Rule X–1005(a), which provides, in pertinent part:

    "The United States Trustee may . . . be heard on any issue relating to his responsibilities in a case under the Bankruptcy Code."

outstanding certain obligations from one debtor to another, some of which are based on guarantees to unrelated third parties. Furthermore, according to the United States Trustee, it may be that one of the debtors incurred indebtedness for the benefit of the other. Taking these factors into consideration, the United States Trustee is concerned that, at such time as the respective creditors' committees begin to "investigate the acts, conduct, assets, liabilities, and financial condition of the [respective] debtor(s)," [2] and seek advice from counsel with respect to instituting proceedings against one of the other debtors, a question might be raised as to whether, under the circumstances, counsel for the respective committees is in a position to give independent and disinterested advice. The attorney for a creditors' committee does not act in a vacuum; he is the employee of the committee and is hired to pursue the interests of said committee. The United States Trustee refers this court to *In re Bohack Corporation,* 607 F.2d 258 (2d Cir., 1979), at 262–63, 264–65; and *In re Ira Haupt & Co.,* 361 F.2d 164, 168 (2d Cir. 1966).

Those cases, considered along with the Bankruptcy Code and the Code of Professional Responsibility, require that the respective applications of the creditors' committees of Proof of the Pudding, Inc., and Frank J. Valenza for the retention of FG&B be, and the same hereby are, denied. In *Bohack,* the circuit court affirmed the bankruptcy court's order disqualifying special counsel for the debtor in possession. The circuit court found that certain omissions in a complaint filed on behalf of Bohack in a state court action evidenced a definite conflict of interest and partiality by the attorney, in light of said attorney's personal ties with Bohack's Chairman of the Board, as well as his financial stake in Bohack. According to the court,

> "An attorney who has been closely related by *professional, business* and *personal* ties to those whose conduct may now be suspect is evidently in no position to make any objective appraisal of the na-

ture and extent of their involvement." *In re Bohack Corporation,* at 264. (emphasis added).

Similarly, in the present case, if FG&B (already employed as counsel for the creditors' committee of Melting Moments, Inc.) were also employed as counsel to the creditors' committees of Proof of the Pudding, Inc., and Frank J. Valenza, the law firm's close professional ties to each of the debtors would, at the very least, make suspect FG&B's advice concerning the scope of the creditors' committees' investigations into the acts, conduct, assets, liabilities and financial condition of the respective debtors, and would also call into question FG&B's decisions concerning the nature, scope and amplitude of litigation. *See, In re Ira Haupt & Co., supra,* at 168.

Furthermore, the court in *Bohack* stated that actual conflict was not a prerequisite to disqualification; rather, . . . "it is the *potential manifestation of the conflict* with which [the court is] concerned." *In re Bohack Corporation,* at 263 (emphasis added). In the present case, a conflict of interest would inevitably arise once FG&B, as counsel for each of the creditors' committees, started performing its duties for the respective committees. To avoid the manifestation of this conflict would serve both the best interests of the parties as well as the integrity of this court. Neither the appointment of special counsel once the conflicts materialize, nor the resignation of FG&B (as they so willingly provide in their affidavits supporting the respective applications) would be as suitable as denying the creditors' applications in the first instance. *See, In re Haupt, supra,* at 168; H.R.Rep. No.595, 95th Cong., 1st Sess. 407 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The court in *Ira Haupt* was concerned with the trustee's retention of his own law firm as counsel in a substantial asset case. Judge Friendly's concern, however, goes beyond the improvidence of self-representation to the actual conduct of bankruptcy

---

**2.** *See,* 11 U.S.C. Section 1103(c)(2).

matters. "The conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt, supra*, at 168. Judge Friendly's admonition to the bankruptcy courts is paralleled by the considerations of the Code of Professional Responsibility (the Code), as applicable to attorneys. For example, Canon 9 of the Code indicates that even the simple appearance of a conflict could be sufficient cause for a court to disqualify an attorney. Furthermore, Canon Five and Ethical Consideration 5–15 of the Code inveigh against representation where potentially differing interests are concerned.

■ Most importantly, though, the Bankruptcy Code, 11 U.S.C. § 1103, mandates against the retention of FG&B as counsel for the respective creditors' committees. 11 U.S.C. § 1103 provides, in pertinent part:

"(b) A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

"(c) A committee appointed under section 1102 of this title may—

    *      *      *      *      *      *

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; * * *

(5) perform such other services as are in the interest of those represented. . . ."

Section 1103 authorizes the committee, subject to court approval, to retain counsel to assist the committee in carrying out the duties set forth in Section 1103(c). Subsection (b), however, requires a committee's counsel to cease representation of any other entity in connection with the case after said counsel begins to represent the committee. The express purpose of this subsection is to prevent the potential of severe conflicts of interest. H.R.Rep.No.595, 95th Cong., 1st Sess. 402 (1977). In the case at bar, FG&B already represents the creditors' committee

of Melting Moments, Inc. (MM). Two of the ten largest creditors of MM are Proof of the Pudding, Inc. (PP), and Frank J. Valenza (FJV). Clearly, the language of Section 1103(b) prohibits FG&B from simultaneously representing the creditors' committees of MM and PP and FJV, the latter in their capacities as individual creditors of MM. Thus, the respective applications of the creditors' committees of PP and FJV for the retention of FG&B violate the intent, if not the express letter, of the law as embodied in Section 1103(b). Although the respective applications of the committees of PP and FJV do not contemplate retaining FG&B as counsel for PP and FJV in the latter's capacity as creditors of MM; nevertheless, the assistance that FG&B would be called on to aid those committees in carrying out their respective duties pursuant to Section 1103(c), would inevitably involve investigations and inquiries into the debts allegedly owed by MM to PP and FJV, respectively. In effect, then, FG&B, if employed by the committees of PP and FJV, would be put into the position of representing conflicting interests. Since Section 1103(b) prohibits such a circumstance, this court must deny the respective applications of the committees of PP and FJV for the retention of FG&B. Completely disinterested counsel is required to best serve the interests of the creditors' committees of these three distinct, but intimately related Chapter 11 debtors.

Thus, statutory law, as well as the integrity of both the bankruptcy court and the bar, require denial of the respective applications of the creditors' committees of Proof of the Pudding, Inc., and Frank J. Valenza for the retention of Finkel, Goldstein & Berzow.

The wisdom or propriety of the initial action taken by the United States Trustee's Office (the Trustee) in choosing the respective creditors' committees for the aforementioned debtors is not at issue here. Although separate and distinct committees were appointed by the Trustee in the three distinct cases, membership in the three committees is overlapping. Thus, three of the

seven unsecured creditors appointed by the Trustee to serve on the committee for Melting Moments, Inc., are:

1. Licia A. DeCamillis
1725 York Avenue
New York, New York 10028;

2. Seacrest Linen Supply Co., Inc., & Seacrest Trading Co., Inc.
4750 Bronx Boulevard
Bronx, New York 10470
(Lazar Berkovits);

3. Jack McCormack & Co., Inc.
160 Central Park South
New York, New York 10019.

Similarly, three of the five creditors appointed by the Trustee to serve on the committee for Frank J. Valenza are:

1. Licia A. DeCamillis;

2. Seacrest Linen Supply Co., Inc., & Seacrest Trading Co., Inc.;

3. Jack McCormack & Co., Inc.

Finally, two of the six creditors appointed by the Trustee to serve on the committee for Proof of the Pudding, Inc., are:

1. Seacrest Linen Supply Co., Inc., & Seacrest Trading Co., Inc.;

2. Jack McCormack & Co., Inc.

Several creditors were appointed to two committees, and two creditors were appointed to all three committees. The problems inherent in overlapping committees, in distinct but related cases, are clearly illustrated in the present case. Those creditors serving on more than one committee will be called on to represent ofttimes competing interests. Their attempts to reconcile these competing interests could very well be to the detriment of other creditors and the respective debtors. Since ultimate decisions concerning litigation and scope of inquiry rest with the respective committees, this court is concerned with the composition of the committees as it is with the choice of committees' attorneys. Despite its concern, however, the court recognizes that its concern in no way alters the determinations made by the Trustee.

Bankruptcy Code Section 151102(a), which directs the United States Trustee to appoint a committee of unsecured creditors, provides:

"(a) As soon as practicable after the order for relief under Chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims." 11 U.S.C. § 151102.

■ The Trustee's selections, however, are subject to the veto power of the court. The court has the power under 11 U.S.C. § 1102(c), to alter the ultimate membership of any committee however, only upon the request of any party in interest after notice and a hearing. To modify the size or composition of a committee, the court must determine that membership of such a committee is not representative of the claims and/or interests of the unsecured claimants. 5 *Collier on Bankruptcy,* ¶ 1102.01 (15th ed. 1979).

■ It seems that completely independent committees, devoid of overlapping [1] membership, can better serve the interests of all of the other creditors in closely related cases.

The retention applications are denied. It is so ordered.