## In re O.P.M. LEASING SERVICES, INC., Debtor.

## In re CALI TRADING INTERNATIONAL, LTD., Debtor.

James P. HASSETT, as Chapter 11 Trustee of O.P.M. Leasing Services, Inc., and James P. Hassett, as Chapter 11 Trustee of Cali Trading International, Ltd., Plaintiffs,

v.

Daniel McCOLLEY, as Chapter 7 Trustee of Myron S. Goodman, Albert F. Reisman, as Chapter 7 Trustee of Mordecai Weissman, Federal Deposit Insurance Corporation, Louisiana National Bank of Baton Rouge, Rhode Island Hospital Trust National Bank, the Lincoln National Life Insurance Company, Westdeutsche Landesbank Girozentrale, the First National Bank of St. Paul, the Paul Revere Life Insurance Company, the Paul Revere Variable Annuity Insurance Company, Avco Corporation Retirement Income Trust and the Paul Revere Protective Life Insurance Company, Defendants.

Bankruptcy Nos. 81 B 10533, 81 B 11203. Adv. No. 81–5486A.

United States Bankruptcy Court, S. D. New York.

Feb. 5, 1982.

Zalkin, Rodin & Goodman, New York City, for James P. Hassett, as Chapter 11 Trustee of O.P.M. Leasing Services, Inc., and James P. Hassett, as Chapter 11 Trustee of Cali Trading International, Ltd.; Henry L. Goodman, Nadine Liebhardt, Stephen Tick, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Albert F. Reisman, as Chapter 7 Trustee of Mordecai Weissman; William M. Silverman, Scott L. Hazan, and Albert F. Reisman, Steven Soll, New York City, of counsel.

Garrity, Connolly, Lewis, Lowry & Grimes, New York City, for Daniel McColley, as Chapter 7 Trustee of Myron S. Goodman; William R. Grimes, New York City, of counsel.

## DECISION ON MOTIONS TO REMOVE TRUSTEE AND HIS COUNSEL

BURTON R. LIFLAND, Bankruptcy Judge.

### Praeambulum

Some features of these highly active, visible and litigious cases [1] and their related

1. THE PROGRAM

*Chapter 11 Cases*

Cali Trading International, Ltd. (No. 81 B 11203)
Trustee appointed—James P. Hassett
Trustee's counsel—Zalkin, Rodin & Goodman
O.P.M. Leasing Services, Inc. (No. 81 B 10533)
Trustee appointed—James P. Hassett
Trustee's counsel—Zalkin, Rodin & Goodman;
Special Counsel (fraud investigation)—Wilmer, Cutler & Pickering
O.P.M. Life Insurance Funds (No. 81 B 11749)
O.P.M. Computer Services, Inc. (No. 81 B 11850)
O.P.M. Leasing Services (Canada), Ltd. (No. 81 B 12193)

civil proceedings may be likened to the structure of the major league baseball season. They too involve multiple players, teams, leagues, ballparks, and inter-intramural contests with the ultimate goal being a share or domination of the World Series spoils.

In the main, involved counsel and parties have demonstrated salutary professional skill, courtesy and efficiency in nearly every facet of these cases. However, it is not surprising that occasionally a team or player, at some point in time, possibly motivated by concern for mid-season standings or for psychological tactical advantage, diverts the focus from the mainstream of the litigating process to concerns that are not truly germane to the ultimate merits of the particular proceeding or contest at hand. This is one of those times.

Three trustees, consisting of a single trustee and his counsel that control five Chapter 11 Reorganization cases, and two trustees each with separate counsel presiding respectively over two Chapter 7 Liquidation cases, have labored in relative harmony in an arena where their interests predominantly coincide. One of the Chapter 7 trustees now instigates a challenge to the Chapter 11 trustee's eligibility to manage one of the reorganization cases and further seeks disqualification of the Chapter 11 trustee's counsel from further prosecution of a key adversary proceeding. That proceeding, since consolidated with others, is concerned with (a) title to and rights against control stock of a bank in derogation of the claimed rights of a multitude of claimants and (b) the ultimate repose of the bank stock interest in one or more of the bankruptcy estates.

Orderly case administration and management favor hearing the decisional considerations in the sequence just set forth. That is, to determine the rights of claimants under (a), then, if necessary, to determine (b), the ultimate rights among the respective estates. The reorganization trustee asserts that there is a unity of interest among the reorganization estates in juxtaposition to the rights of the individual trustees and other creditors; after that threshold issue is determined, a conflict (more imagined than real) may exist among the reorganization estates. The recusant trustee is of another view and would suspend the "games" in favor of a replay under more favorable conditions.

Turning to the motions at hand, the issues presented may be distilled as follows:

1. Does an intercompany claim between a subsidiary and parent corporation in separate reorganization cases prohibit appointment of the same trustee in both cases, or, if so appointed, constitute a sufficient ground for his removal from one (the second) appointment?

2. Where a single trustee is presiding over related corporations in separate reorganizations with potential for recovery of property not clearly earmarked to either estate, is there a conflict that requires separate administration and disqualification of trustee's counsel from representation of either estate in litigation commenced to establish the trustee's ownership vis a vis other claimants?

## FACTS

O.P.M. Leasing Services, Inc. ("OPM") was a large computer leasing and financing company with its principal office located in New York City. It serviced corporations throughout the United States and overseas and operations were in the hundreds of millions of dollars.

On March 11, 1981, OPM filed a voluntary petition in bankruptcy, 11 U.S.C. § 301, seeking reorganization relief under Chapter

---

*Chapter 7 Cases*
Mordecai Weissman (No. 81 B 10673)
Trustee elected—Albert F. Reisman
Trustee's counsel—Otterbourg, Steindler, Houston & Rosen
Myron S. Goodman (No. 81 B 10681)
Trustee elected—Daniel McColley

Trustee's counsel—Garrity, Connolly, Lewis, Lowry & Grimes
A rough count reveals approximately forty adversary proceedings *pending* (many prior suits were concluded or settled). Innumerable motions are also in line. Parties or their counsel requesting notices number in excess of 150.

11 of the Bankruptcy Reform Act of 1978,[2] and initially was continued in the operation and management of its business as a debtor in possession. 11 U.S.C. §§ 1101(1) and 1107(a). Soon after, on March 24, 1981, upon the application of certain creditors who charged OPM with fraud, and with the consent of the debtor, no opposition being heard, the Court ordered the appointment of a trustee, 11 U.S.C. § 151104(a), to operate the debtor's business, 11 U.S.C. § 1108. The United States Trustee for the Southern District of New York appointed James P. Hassett ("Hassett") as reorganization trustee on March 27, 1981.[3] The Court approved the appointment.

OPM continues to operate under the stewardship of Hassett, who is imbued with all of the powers and duties pertaining to a trustee under 11 U.S.C. § 1106(a), employing some seventy persons and having a biweekly payroll of approximately $70,000. *In re O.P.M. Leasing Services, Inc.,* 13 B.R. 64, 65, 4 C.B.C.2d 1150, 1151, 7 B.C.D. 1307, 1308, Bankr.L.Rep. (CCH) par. 68, 273 (S.D. N.Y.1981) (affirming 13 B.R. 54, 4 C.B.C.2d 913, 7 B.C.D. 1031, Bank.L.Rep. (CCH) par. 68, 073 (Bkrtcy.S.D.N.Y.1981)) *aff'd Weissman and Goodman v. Hassett,* 670 F.2d 383 (2d Cir. 1982).

The allegations of fraud that led to Hassett's trustee appointment also led the United States Attorney for the Southern District of New York to convene a grand jury to investigate the activities of OPM and its principals, Mordecai Weissman ("Weissman") and Myron Goodman ("Goodman"). Weissman was the president of OPM and Goodman was its vice president, and each was a director (positions they have since resigned). *In re O.P.M. Leasing Services, supra.* A recent three count information (mail fraud, wire fraud, and false statements to banks) charged certain officers of OPM with a scheme to defraud nineteen lending institutions of an aggregate of over $190,000,000 by fraudulently inducing the lending institutions to purchase notes secured by fictitious and falsified leases and related financing documents. Weissman and Goodman were identified as "co-schemers". The officers, all vice presidents, pled guilty to the information.

OPM is a wholly owned subsidiary of Cali Trading International, Ltd. ("Cali"). However, OPM was the operating company within a group of Cali controlled interests. In fact, Cali had no employees or management of its own and maintained its "place of business" in the offices of OPM. Cali is a closely held corporation owned 100% by Weissman and Goodman on a 50–50 basis.

Both Weissman and Goodman filed voluntary petitions for liquidation under Chapter 7 of the Bankruptcy Code on March 27, 1981 (Nos. 81 B 10673 and 81 B 10681 respective-

---

**2.** Title I, Section 101, of the Bankruptcy Reform Act of 1978 ("B.R.A."), Pub.L. 95–598, 92 Stat. 2549, enacted and codified the substantive bankruptcy law as Title 11 of the United States Code (the "Bankruptcy Code"). The former bankruptcy law, the Bankruptcy Act of 1898, as amended, was repealed, effective October 1, 1979; however, it continues to govern those cases filed prior to its repeal. B.R.A. Sections 401–403. The former law also continues to serve as a valuable guide in uncharted areas under the new bankruptcy law.

**3.** The Southern District of New York is one of ten groups of judicial districts in the experimental United States trustee program designed to relieve bankruptcy judges from some of their former administrative and supervisory roles, including the appointment of trustees. See 11 U.S.C. § 1501 *et seq*; 28 U.S.C. § 581, B.R.A. Sections 224 and 408. Upon a motion brought under 11 U.S.C. § 151104, the court merely

determines whether a trustee is necessary. If so determined, selection is made independently by the U.S. Trustee.

The trustee chosen (Hassett) is a successful businessman with impressive professional qualifications in the computer leasing field. He is trained in electronic engineering and during his varied career has taught in the computer field; worked for IBM, the colossus of the computer field; engaged in computer consulting work; designed equipment for computers and data processing; started a computer research, design and development company (later a $14 million a year business); acted as chief executive officer to investigate activities within a troubled computer leasing firm (successfully rehabilitated); and, was appointed a director of a large public corporation to ferret out possible wrongdoing by certain officers. See July 18, 1981 transcript of Cali at 31–37.

ly). *Weissman and Goodman v. Hassett, supra,* at 933. Each individual's estate has had its mandatory interim trustee, 11 U.S.C. § 701(a), supplanted by a trustee elected pursuant to 11 U.S.C. § 702(b): Albert F. Reisman * ("Reisman") for Weissman and Daniel McColley ("McColley") for Goodman.

On June 15, 1981, Hassett, in his capacity as trustee of OPM, filed an involuntary petition, 11 U.S.C. § 303(b), under Chapter 11 against Cali that went uncontroverted resulting in the entry of an order for relief by the Court, 11 U.S.C. § 303(h), on June 26, 1981. OPM claims Cali is indebted to it for $134,153.98. Hassett, as a party in interest, 11 U.S.C. § 1109(b), also moved for the appointment of a trustee for Cali, which was ordered on July 1, 1981 over opposition by the Weissman and Goodman interim trustees to the appointment of a trustee in the Cali case (they preferred debtor-in-possession status). Five days later, the United States Trustee, in a Notice of Appointment of Trustee, accompanied by a Report of Selection for Appointment as Trustee, appointed Hassett.

The Notice and Report made clear that the U.S. Trustee's selection followed consultations with, among others, parties in interest in the Cali case and the related cases of OPM, Weissman, and Goodman. Recognizing the potential for conflict, but subduing the concern because of other overriding considerations, the U.S. Trustee concluded that should an actual conflict develop, the issue could be dealt with at that later time. It was evident that the U.S. Trustee engaged in a considered and "careful screening of (the) candidate prior to his selection." [4] On July 6, 1981, the Court signed an order approving Hassett's selection. The order was not appealed. As in the OPM case, Hassett, as trustee of Cali, retained Zalkin, Rodin & Goodman, Esqs., as

his counsel, and the Court approved the retention in an order, dated July 13, 1981. Both the application of Hassett and the affidavit of counsel submitted in support of the appointment were forthright with respect to respective considerations of potential conflict arising out of the relation of Cali to OPM and were weighed by the Court.

Now, several months later, by a November 2, 1981 Order to Show Cause, Reisman (Chapter 7 trustee of the estate of Weissman) seeks 1) removal of Hassett as Chapter 11 trustee of Cali pursuant to 11 U.S.C. § 324 [5] because of alleged conflicts between the Cali and OPM estates; and 2) disqualification of Hassett's counsel in *Hassett, et ano v. McColley, et al,* a vigorously contested lawsuit commenced July 31, 1981 by Hassett as representative of both Cali and OPM in which he seeks to establish ownership rights in the stock of First National Bank of Jefferson Parish, Louisiana ("Jefferson Bank"), naming as defendants, among others, Reisman, who by operation of law has succeeded to the 50% Jefferson Bank stock interest ostensibly owned by Weissman. In the twelfth hour, Reisman was joined in his application by McColley (Chapter 7 trustee of the estate of Goodman), and in the thirteenth hour by First National Bank of St. Paul, one of the creditors of OPM, Weissman, and Goodman.

■ The key conflict alleged is that it is unclear as to whether the Jefferson Bank stock, if recovered by Hassett, should inure to the benefit of OPM or Cali. Reisman's "critical concern" is that in event anyone other than the Weissman estate is entitled to the Jefferson Bank stock, it be Cali so that possibly he may enhance his own estate via Weissman's fifty percent stock ownership of Cali.[6] Reisman attempts to substantiate the conflict with two letters, annexed

---

* Reisman is recognized in the field of equipment leasing. See "The Business Lawyer" Vol. 37, Jan. 1982, p. 273, book review of Reisman & Fritch, Equipment Leasing 1981 (P.L.I.).

4. 2 Collier on Bankruptcy (15th ed.) par. 324.02 at 324–3.

5. Chapter 3 applies in cases under Chapter 11 by the force of 11 U.S.C. § 103(a).

6. Still unresolved, and the subject of prior proceedings, is Weissman's and Goodman's attempt to claim the stock of Cali as exempt property pursuant to 11 U.S.C. § 522(d).

as exhibits to his order to show cause, (and part of Hassett's original and amended complaint) purportedly executed by Weissman and Goodman regarding their alleged intention that Cali be the owner of the Jefferson Bank stock. Reisman further raises the spectre of other third party conflicts involving various equipment leases, and he questions other actions taken by Hassett in the names of both OPM and Cali. There is also the matter of the intercompany claim.

Reisman's application marks a cleavage in the progress of meaningful *ex curia* settlement negotiations among the trustees. By unsolicited letter to the Court dated January 18, 1982, Reisman's counsel requested additional time to reinforce the original motions stating "meaningful settlement negotiations have been held, which, if successful, would have obviated the disqualification motions." The inference is inescapable that the motions have a tactical intendment and insipid regard for the genuineness of the conflict issue. Resisting Reisman's request for further delay, Hassett moved for a prompt determination of the simmering motions.

The matters were heard on January 20, 1982 and decision reserved. At this juncture, I conclude that removal or disqualification of Hassett as the trustee of Cali or his counsel from representing Cali and OPM in the consolidated adversary proceeding is inappropriate. See *In re Ira Haupt & Co.*, 379 F.2d 884, 892 (2d Cir. 1967).

**I. Removal of Hassett as Trustee of Cali**

Reisman's attack upon Hassett's Cali trusteeship advances from 11 U.S.C. § 15324, which states:

The court, after notice and hearing, may remove a trustee other than the United States trustee, or an examiner, for cause.

"Cause" is not defined, but lack of disinterestedness by an appointed trustee would be sufficient cause for removal. 11 U.S.C. § 1104[7] requires that a trustee be a "disinterested person", 11 U.S.C. § 101(13)[8], and in a reflexive manner references 11 U.S.C. § 324.

The definition of "disinterested person" is adapted from Section 158[9] of Chapter X of the Bankruptcy Act of 1898, 11 U.S.C. § 558 (1976 ed.). H.R.Rep.No.595, 95th Cong., 1st Sess. 310–311 (1977); S.Rep.No. 989, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News, p. 5787. Bankruptcy Rule[10] 10–202(c)(2),[11] which also contains guidelines for disinterestedness, is likewise derived from Section 158. See Advisory Committee's Note to Rule 10–202. Though 11 U.S.C. § 101(13) expands and modifies in some respects its antecedents, I have determined that those changes do not affect the vitality of those cases decided under the prior law (the statute or rule) that address the issues within.

Under pre-Bankruptcy Code law, persons were not precluded from simultaneously acting as reorganization trustee of both a

---

7. 11 U.S.C. § 151104(c) states:
   If the court orders the appointment of a trustee or ... if a trustee ... is removed under section 324 ... then the U.S. trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person ... to serve as trustee ... in the case.

8. "disinterested person" means person that—
   (A) is not a creditor, an equity security holder, or an insider;
   \*  \*  \*  \*  \*  \*
   (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders ... or for any other reason;

9. Section 158 states:

A person shall not be deemed disinterested ... if—
(1) he is a creditor or stockholder of the debtor; or
\*  \*  \*  \*  \*  \*
(4) it appears that he has ... for any reason an interest materially adverse to the interests of any class or creditors or stockholders.

10. The Rules of Bankruptcy Procedure, promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for use under the former Bankruptcy Act of 1898, as amended, continue to be applicable under the Bankruptcy Code to the extent not inconsistent. See B.R.A. Sections 247, 402, and 405.

11. Pertinent text is same as in Note 9, *supra*.

parent corporation and its wholly owned subsidiary, notwithstanding the general rule that a person shall not be deemed disinterested, and thus disqualified from trusteeship, if he is a creditor or stockholder of the debtor. 6 Collier on Bankruptcy (14th ed.) par. 7.08(2) at 1211–1212; 13A Collier on Bankruptcy (14th ed.) par. 10–202.06(2) at 10–202–9; *In re Realty Associates Securities Corporation,* 56 F.Supp. 1007 (E.D.N.Y.1944). *See also G.E.C. Securities,* 223 F.Supp. 861, 865 (S.D.N.Y.1963); *aff'd* 331 F.2d 655 (2d Cir. 1964).

*Meredith v. Thralls,* 144 F.2d 473 (2d Cir. 1944) *cert. den.* 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 cited by Reisman in opposition to this line of authority, is easily distinguished. That case held only that "an employee of a corporation which owns through another corporation all the stock of the debtor is disqualified to act as a disinterested trustee." 6 Collier on Bankruptcy (14th ed.) par. 708(5) at 1212; 13A Collier on Bankruptcy (14th ed.) par. 10–202.06(5) at 10–202–13; see *Katz v. Kilsheimer,* 327 F.2d 633, 635 (2d Cir. 1964). The claim asserted by OPM against Cali, does not make Hassett the "friendly" trustee prohibited by *Meredith v. Thralls, supra* at 475. As explained in *Realty Associates Securities Corp., supra,* it is "personal interests" that are forbidden. Hassett is acting as a fiduciary and has no personal interest. *Cf. In re Freeport Italian Bakery, Inc.,* 340 F.2d 50, 54 (2d Cir. 1965), ("(g)rounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships."); *see also In re Inland Gas Corp.,* 208 F.2d 13, 16–17 (6th Cir. 1953).

Notwithstanding the merits of separate administration, and there are good reasons both for and against separate administration, see *In re National Public Service Corporation,* 68 F.2d 859, 862–863 (2d Cir. 1934), *cert. den.* 292 U.S. 641, 54 S.Ct. 773, 78 L.Ed. 1492, the Court is concerned with the timing of Reisman's applications. The realities and practicalities of bankruptcy administration in large, complex cases, such as these, makes it "doubtful" that a court will sever an established trusteeship over multiple related corporations in cases that are well progressed unless there is a showing of actual, present conflict incapable of any other equitable resolution, especially where, as here, full disclosure of the potential for conflict was made at the outset of appointment. Indeed in *National Public Service* certain creditors were not allowed to raise the issue of parent/subsidiary conflict of interest involving a single trustee because they had worked hand in hand with the trustee for some eight months without formal opposition.

Surely, the U.S. Trustee's Report of Selection for Appointment as Trustee, the application of Hassett and the affidavit of his counsel were more than sufficient to put interested parties on notice of apparent or potential conflicts of interest. Yet, the Court's order approving the appointment went unchallenged on a formal basis. And the Court must agree with Hassett that there is no present, actual conflict, but that there exists a unity of interest and singleness of purpose on the part of the Cali/OPM estates in prevailing in the pending consolidated adversary proceeding. Thus, removal of Hassett from his Cali trusteeship is unwarranted.

The Court is not unmindful that Reisman's applications may be nothing more than litigation strategy to secure leverage in the consolidated adversary proceeding. The timing of the instant application and the impendent day of reckoning in the consolidated adversary proceeding seem more than coincidental. No other event or change in circumstances during the past several month silent hiatus that would precipitate Reisman's challenge has come to the Court's attention. Certain correspondence copied to the Court can also be read to support this possibility. Lastly, there has been a clear lack of dispatch in pursuing these applications filed back in November, 1981.[12] This procrastination, along

---

12. A request by Reisman for a further adjournment to first pursue discovery ancillary to

these motions was denied at the January 20, 1981 hearing, it appearing that his untimely

with the lapse between the order of appointment and the application is conduct that also provides a basis for waiver or estoppel. *See National Public Service, supra.*

Timing aside, apparently both trustees have overlooked *In re International Oil Company*, 427 F.2d 186 (2d Cir. 1970), the most recent pronouncement of our circuit's sentiment in this area. *International Oil* confirms the retrenchment by this circuit of an overly strict conflict of interest rule debated by Judge Learned Hand in *National Public Services, supra*, which Judge Hand himself considered "doubtful", but whose ruling is on other grounds (as discussed above).

International Oil Co. was the parent of three wholly owned subsidiaries, all four of which had filed under Chapter XI of the 1898 Bankruptcy Act. A single trustee was approved to manage all four corporations. The arrangement attempt failed and the four were adjudicated bankrupts. Upon the application of a substantial creditor of International Oil Co., the bankruptcy court disqualified the Chapter XI trustee from eligibility as trustee of the bankrupts and further determined that there should be a separate trustee for each corporation. The Chapter XI trustee and the creditors' committee that had supported him moved in the district court to upset the bankruptcy court's order. The district court approved separate trusteeships, but reversed the Chapter XI trustee's ineligibility and ordered new trustee elections. Both parties appealed to the Court of Appeals. The Court of Appeals agreed that disqualification was unwarranted, being based on trivial considerations and insubstantial evidence, but disagreed with the need for separate trustees. Pointing out that the justification for separate trusteeships was certain intercompany claims (one for $350,000 and another for $681,000), an intercompany guarantee (of $1.5 million), and the granting of a lien by all four corporations to another creditor, the court opined:

> application sought little more than a fishing expedition in the hope of finding support for

Despite what we said in *In re National Public Service Corp.*, 68 F.2d 859 (2 Cir. 1934), we do not think such a showing is sufficient to saddle these estates with the expense of separate trustees and trustees' attorneys at the present time.

*Id.* at 187. The court's "mandate" was to appoint the Chapter XI trustee as trustee of all four bankrupt corporations.

Clearly, *International Oil*, puts an end to any argument that Hassett's $134,153.98 intercompany claim should disqualify him. The fact that Hassett as Chapter 11 trustee of OPM is a creditor of Cali or that Hassett as Chapter 11 trustee of Cali owns the stock of OPM does not prevent Hassett from being disinterested or constitute an impermissible conflict of interest.

The possibility of Hassett recovering the Jefferson Bank stock is also an insufficient basis for prophylactic action. Should Hassett be successful in recovering the Jefferson Bank stock and there is a genuine issue as to whether the Cali or OPM estates own the stock, the Court can be called upon to protect and allocate ownership interests amongst the competing bankruptcy estates. For that matter, "the apparent conflict of interest might be resolved in a number of ways," *In re General Economics Corporation*, 360 F.2d 762, 766 (2d Cir. 1966), including the appointment of special counsel. *In re General Economics Corporation*, 242 F.Supp. 439, 440 N.1 (S.D.N.Y.1965); *In re G.E.C. Securities, Inc.*, 331 F.2d 655, 656 (2d Cir. 1964); *In re REA Holding Corp.*, 4 B.C.D. 1249, 1251, 1254 (Bkrtcy.S.D.N.Y. 1979) *aff'd* 2 B.R. 733 (D.C. S.D.N.Y.1980). It is only at this later time that the alleged conflict will reveal itself as real or merely apparent and imaginary. To act earlier in a preemptive manner could result in confusion and interruption of the orderly administration of the OPM and Cali bankruptcy proceedings and cause them to incur unnecessary great expense.

A wait and see approach was utilized in *Katz v. Kilsheimer*, 327 F.2d 633 (2d Cir. 1964). In *Katz*, the Court of Appeals saw

> other alleged, but unsubstantiated, conflict of interest claims.

no prejudice to postponing an application requesting removal of a trustee and his counsel from acting for both a parent and subsidiary corporation in which a conflict was alleged, so as to allow the trial court to proceed with a soon thereafter scheduled confirmation hearing, at which time the removal motion could be renewed, if necessary, there being the possibility that the resolution of certain issues at that hearing might make the application for separate trustees moot.

The Court can structure the unfolding of the consolidated adversary proceeding consistent with proper case management so as to minimize the opportunity for the premature realization of potential conflicts. See Bankruptcy Rule 716 and F.R.Civ.P. 16. This approach will prove least wasteful of time and money given the numerous hurdles Hassett must jump in order to prevail over other claimants and in light of considerations that could subsume the alleged conflict (including substantive consolidation of the estates, which Hassett asserts he will pursue).

Significantly in *Katz, supra*, the court suggested that with some good will on all sides, a sensible solution could be worked out alleviating the need for a resolution through litigation. This advice is sound and applicable here. The present internecine battle will accomplish little more than diverting each of the trustees from his primary thrust of asset maximization.

The instant application to remove Hassett as trustee of Cali is denied.

II. *Removal of Trustee's Counsel from Pending Adversary Proceeding*

■ Reisman's asserted grounds for barring Hassett's counsel from continued participation in the consolidated adversary proceeding (*Hassett v. McColley*) is 11 U.S.C. § 327(a) and (c) and Canons 5 and 9 of the Code of Professional Responsibility. 11 U.S.C. § 327(a) and (c) in pertinent part state:

(a) . . . the trustee, with the court's approval, may employ one or more attorneys, . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(c) In a case under Chapter 7 or 11 of this title, a person . . . may not, while employed by the trustee, represent, in connection with the case, a creditor.

Canon 5 states:

A lawyer should exercise independent professional judgment on behalf of a client.

Disciplinary Rule 5–105(B) and (C) state:

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR–5–105(c).

(C) In the situations covered by DR–5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Canon 9 states:

A lawyer should avoid even the appearance of professional impropriety.

Many of the aforementioned reasons and authorities supporting the denial of Reisman's motion to remove Hassett as trustee of Cali are equally supportive as the basis for denying his second motion. However, some further non-duplicative discussion is merited.

There are no facts to support Reisman's allegations of violation of the Code of Professional Responsibility by counsel. *See generally, REA Holding Corp., supra*, 4 B.C.D. at 1253. D.R. 5–105(c) and EC 5–14, 15, 16 and 19 allow for multiple representation under prescribed circumstances. Full disclosure of potential conflicts of interest was made by counsel to its client(s) as well

as to the Court, see *REA Holding Corp., supra,* 2 B.R. at 736, and the retention approved in each case by Hassett as representative of the respective estate and the Court. See Hassett affidavit dated November 30, 1981; retention order dated July 13, 1981.

A trustee is entitled to engage attorneys of his own choice, subject to the court's approval. *In re W. T. Grant Co.,* 4 B.R. 53, 82–83, (Bkrtcy.S.D.N.Y.1980), and an application for disqualification should be undertaken with considerable circumspection and reluctance "as disqualification has an immediate adverse effect on the administration of a bankrupt estate and because such motions are often interposed for tactical purposes ..." *Id.* at 82; *Cf. Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979). The rule is that mere allegations of a conflict of interest on the part of a trustee and/or his counsel, constitute an insufficient basis for disqualification, particularly where there is no actual or potential injury to the estate(s) or interests of creditors. *See In re Concept Packaging Corp.,* 7 B.R. 607, 609 (Bkrtcy.S.D.N.Y.1980).

Earlier, I found that there is presently a unity of interest between the Cali and OPM estates. Counsel is not faced with representing adverse interests. Moreover, while there may be two clients, they share at this time a common goal sought to be achieved by a single trustee, thus making an argument of divided loyalty by counsel metaphysical. In fact, the synergy of Mr. Hassett's attack may very well yield greater results against opposing claimants than divers representation. Here, the conflict is decidedly more apparent than real and there is no impropriety in the same attorney representing multiple related debtors under the guidance of a single trustee. *See In re Heatron, Inc.,* 5 B.R. 703, 705 (Bkrtcy. W.D.Mo.1980).

*Proof of the Pudding, Inc.,* 3 B.R. 645 (Bkrtcy.S.D.N.Y.1980), cited extensively by Reisman,[13] and labeled "controlling", con-

cerns the retention of a single law firm for three separate creditors' committees in three separate bankruptcy cases. Perhaps, it would be somewhat more analogous if the Court were faced with two separate and distinct trustees who desired retention of the same attorneys. In a single trustee situation there is no obstruction to counsel providing independent and disinterested advice.

The present application to remove Hassett's counsel from representation of OPM and Cali in the consolidated adversary proceeding is denied.

So Ordered.

---

**13.** Reisman asserts that the U. S. Trustee "did not heed the 'disinterested person' requirement of the Code (§ 151103 (sic)(c)) in naming Hassett as the Cali trustee." Jan. 19, 1981 Memo. of Law at 9. Yet, he cites as "controlling", *Proof of the Pudding,* Jan. 21, 1981 Supp. and Reply Memo. at 11, a case that demonstrates the ability of the U. S. Trustee to perceive and oppose conflicts of interest.