**In re Lawrence S. and Cheryl IORIZZO, Debtors.**

**In re BAY ISLE OIL CO., INC., et al., Debtors.**

**Bankruptcy Nos. 883–31066–20, 883–31293–20 to 883–31297–20.**

United States Bankruptcy Court, E.D. New York, at Westbury.

Sept. 23, 1983.

**466**

Chester B. Salomon, P.C., New York City, for debtors by Chester B. Salomon and David Greene, New York City.

Harvis & Zeichner, New York City, for trustees by Abraham Backenroth, New York City.

Thomas Lopresto, Trustee.

Cadwalader, Wickersham & Taft, New York City, for Agway Petroleum Corp.

Cahn, Wishod & Wishod, Richard Cahn, Melville, N.Y., for Lawrence and Frances Reinhard.

## MEMORANDUM AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

Lawrence S. and Cheryl Iorizzo, chapter 11 debtors, (the Iorizzos), and Bay Isle Oil Co., Inc., Larch Oil Co., Inc., Larch Resources, Inc., Page Motors, Inc. and Sans Souci Corp., chapter 11 debtors, (the five corporations), moved for reconsideration of two previous orders of this Court, dated August 18, 1983 and August 25, 1983, which authorized the retention of Harvis & Zeichner as special counsel to the Trustee for the

Iorizzo estate and the five corporate estates. Special counsel had been retained to investigate and recover assets of the debtors. Substantively, the Iorizzos and the five corporations, are seeking the disqualification of Harvis & Zeichner as special counsel to the Iorizzo and corporate estates based on an alleged conflict of interest. More specifically, they allege that a conflict exists between Harvis & Zeichner as special counsel to the Trustee of the Iorizzo and the corporate estates, and as general counsel for the Trustee of Vantage Petroleum Corp., a related chapter 11 debtor (Vantage).

The Iorizzos and the five corporations cite as evidence of a conflict of interests three adversary proceedings that have been instituted between several of the debtors,[1] and an assertion by the Trustee for the Iorizzo and five corporate estates that "all of these corporations and matters are intermingled. . . ." While the Court might agree with the movants that the existence of an actual conflict of interests would warrant the relief requested, the Court has determined that at the present time there is no such conflict of interest. Furthermore, after careful consideration of the history and circumstances of these related cases, the Court has concluded that the interests of these related estates require that their respective Trustees' choices of counsel not be disturbed. Consequently, the motions are denied.

### Background

Vantage was and currently is engaged in the business of leasing and operating gasoline stations, and distributing petroleum products. On August 2, 1982, an involuntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 303 & 701 *et seq.* (Supp. IV 1980) was commenced against Vantage by several of its creditors. Vantage converted the case to one under chap-

1. The first adversary proceeding was instituted by the Vantage Trustee against the Iorizzos and the five corporations seeking a determination that the assets of these defendants are the assets of the Vantage estate. In the time since this action was commenced, the Court has ap-

pointed a trustee for the Iorizzo and the five corporate estates. Prior to the appointment of the trustee, two of the five corporations brought adversary proceedings against the Vantage estate for the payment of rent allegedly due under certain leases.

ter 11. Thereafter, the petitioning creditors moved for the appointment of an operating trustee pursuant to 11 U.S.C. § 1104(a). Upon this Court's findings that the Iorizzos, as owners and operators of Vantage, had defrauded the creditors of Vantage out of millions of dollars, George W. Hudtwalker was appointed Trustee to operate the debtor's business. Shortly thereafter, the law firm of Hershcopf & Stevenson was retained as general counsel to the Vantage Trustee. Abraham Backenroth, a member of Hershcopf & Stevenson, started the investigations and prosecutions needed to locate and recover assets of Vantage. More recently, Mr. Backenroth has become a member of Harvis & Zeichner, and the latter firm was substituted as general counsel for the Vantage Trustee.

On February 17, 1983, the Vantage Trustee filed an adversary proceeding against the Iorizzos, the five corporations and other entities, to recover assets allegedly belonging to Vantage. The next day, an order was entered attaching all of the property of the Iorizzos and the five corporations. On May 27, 1983, before the adversary proceeding could be heard, the Iorizzos filed a voluntary chapter 11 petition. Based on the Court's previous findings of fraud on the part of the Iorizzos, the Court appointed Thomas LoPresto as chapter 11 Trustee for the Iorizzo estate. On June 30, 1983, the five corporations filed voluntary chapter 11 petitions. On August 11, 1983, shortly before the Court appointed Mr. LoPresto Trustee for the five corporate estates, two of the five corporations filed adversary proceedings against Vantage to recover rents allegedly due the corporations for gasoline stations leased by Vantage.

Before a consideration of the applicable law, it should be noted that the Trustees for the Vantage, Iorizzo and the five corporate estates face several substantial obstacles to their investigations, prosecutions, and other actions to be taken to recover the assets of these related corporations. The Iorizzos, in their own case, and Lawrence S. Iorizzo, as designated responsible officer in the Vantage and five corporate cases,[2] have continuously and repeatedly thwarted the efforts of the trustees in their investigations by refusing to answer questions posed to them at section 341 meetings of creditors[3] and by failing to disclose or turnover any assets to the Trustees.

The Trustees involved in this matter have entered into a stipulation with each other and with the creditors' committees for the Vantage and the Iorizzo estates, in which they attest that the best interests of the estates require the retention of the same counsel for the purpose of continuing the investigation into assets of the estates, and in which they agree that counsel for the Vantage Trustee should continue that investigation. They further attested that the assets recovered will be divided at a later date. At the hearing on this motion, Mr. LoPresto and Mr. Backenroth represented that Harvis & Zeichner will not be involved with prosecuting the inter-estate litigation, and that the pending inter-estate litigation will be stayed until joint efforts on behalf of all the estates are no longer necessary.

*Discussion*

The touchstone for a resolution of this matter is the breadth of focus with which this Court should view the issue involved. Counsel for the Iorizzos and the five corporations urge this Court to look narrowly upon the circumstances surrounding their cases, and see only that the estates of the several debtors have claims between each other that warrant strict precautions against any possible conflict of interests. Counsel asserts that whether or not an actual conflict of interests exists, this Court should protect the integrity of the bank-

---

**2.** In cases where a debtor is a corporation, the Bankruptcy Rules provide that the Court may designate officers, directors, trustees or other controlling bodies to be considered the debtor for this and similar purposes. Bankruptcy Rule 9001(5).

**3.** The Court recognizes that the Iorizzos may be properly exercising their Fifth Amendment privilege against self-incrimination, but the fact remains that the Trustees' duties are considerably hindered thereby.

ruptcy process by avoiding even the possibility of a future conflict. To do so, however, the Court would be forced to shut its eyes altogether to bankruptcy reality, and permit the integrity of the process to exist in lieu of the debtors' estates. Plain reality dictates that a process is meaningless absent something with which to proceed.

On the other hand, the Trustee for the Iorizzo and the corporate estates, and his special counsel, with the full blessings of the future recipients of recaptured assets, argue that the estates need to jointly venture after assets that were nefariously hidden by the Iorizzos. Whereas the movants request this Court to narrowly focus upon any possibilities of conflicts and apply Canons 5 and 9 of the Code of Professional Responsibility rigidly, the Trustee and special counsel request the Court to consider the history of the debtors and their principals, and the future interests of all the related estates.

■ When a motion is made to disturb a client's choice of counsel, the court is required to carefully exercise its discretion and to weigh all of the competing factors involved. *See Bohack Corp. v. Gulf & Western Industries, Inc.*, 607 F.2d 258, 263–264 (2d Cir.1979) ("Under these circumstances the possible delay and additional expense caused by replacement are clearly outweighed by considerations of the integrity of the judicial process. We find therefore no abuse of discretion in Judge Parente's determination that [special counsel] be removed...."); *Katz v. Kilsheimer*, 327 F.2d 633, 636 (2d Cir.1964) ("[T]he conflict between parent and subsidiary may be so intense and important that sound discretion would demand separate representation or, at the very least, the appointment of special counsel....").

■ Once it is determined that the Court will consider the issue in light of all the facts of these ongoing bankruptcy proceedings, it becomes clear that the movants' position cannot be sustained. As shown by the following provisions of the Bankruptcy Code and the Professional Code of Responsibility, the best interest of a debtor's estate

is of utmost importance in a court's decision whether to approve a trustee's choice of counsel. With the court's approval, a trustee may employ a disinterested attorney who does not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a). For our purposes, a "disinterested" attorney is defined by the Code to be an attorney who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders...." 11 U.S.C. § 101(13)(E). Canon 5 of the Code of Professional Responsibility states:

A lawyer should exercise independent professional judgment on behalf of a client.

In addition, Disciplinary Rule 5–105(B) and (C) states:

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR–5–105(c).

(C) In the situations covered by DR–5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

■ Applying these principles to the case at bar, it is clear that the retention of Harvis & Zeichner was proper. First, as special counsel to the Trustee of the Iorizzo and the five corporate estates, Harvis & Zeichner does not represent an interest adverse to any of the estates involved herein. Although Harvis & Zeichner represents estates which may have interests adverse to each other, the interests that Harvis & Zeichner represent as special counsel to the Trustee, are the interests the estates share in common to investigate and recover concealed assets. Furthermore, the Court is

convinced, as are the creditors' committees, that the best interests of these estates *require* that Harvis & Zeichner's representation of the Trustees for limited purposes not be disturbed. Harvis & Zeichner has already undertaken an extensive investigation into the assets of Vantage, its affiliate companies, and their former principals. Limited joint retention of counsel would save the Iorizzo and the five corporate estates the added expense that would be generated by retention of counsel unfamiliar with the facts and proceedings involved in these cases. In addition, separate retention would duplicate the legal and administrative costs of recovering the assets.

Counsel for the movants argue that the mere expense of separate counsel is not an adequate ground for allowing a conflict to remain. While this may be true, the Court sees no actual conflict in that Harvis & Zeichner represents an interest only common to the estates. Harvis & Zeichner has represented that its firm will not prosecute the inter-estate claims. In any event, the Second Circuit in *Bohack* has stated that "[t]he delay and additional expense created by substitution of counsel is a factor to which we have attached considerable significance...." 607 F.2d at 263. *Cf. Katz v. Kilsheimer,* 327 F.2d 633, 635 (2d Cir.1964) (To automatically require separate trustees and counsel for a parent and subsidiary, because of a substantial claim by a subsidiary against its parent, might cause serious additional expense in the already expensive process of reorganization.). In *Bohack,* the court held that the Bankruptcy Court properly exercised its discretion when it disqualified an attorney for the debtor. The Bankruptcy Judge had found that counsel chosen by the debtor was a close personal friend of the debtor's chairman, and that the decision whether to include the chairman as a defendant in an action brought by the debtor should be made by disinterested counsel. *Id.* at 262. The Second Circuit held that since the conflict of interest went to the

core of the proceeding for which counsel was retained to prosecute, the additional expense of replacement was clearly outweighed by considerations of the integrity of the judicial process. *Id.* at 263–64. In the case at bar however, requiring separate counsel for the Vantage, Iorizzo, and the five corporate estates, for the limited purpose of investigating and recovering their assets, may impose such difficulties and duplicate expenses as to waste away the assets of the related estates.

In addition to the conflict of interest arguments, movants raise the admonition of Canon 9 of the Code of Professional Responsibility, which states that:

A lawyer should avoid even the appearance of professional impropriety.

It should first be stressed that the role of Harvis & Zeichner shall remain one of limited representation for all of the chapter 11 estates involved herein. In the unlikely event that counsel overstep their limited function, the Court trusts that movants will renew their motion. Counsel for all the parties involved have shown a high level of courtesy and integrity thus far. The Court is aware of no reason that such continued performance cannot be expected.

The Second Circuit recently had the opportunity to discuss attorney disqualification in situations other than those where an attorney was in a position to use privileged information against a former client or where a conflict of interests existed. *See Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). The *Nyquist* Court observed that in cases other than those mentioned, considerable reluctance has been shown to disqualify attorneys, because of the immediate adverse effect that results from separating the client from counsel of his choice, and because disqualification motions are often interposed for tactical reasons.[4]

---

4. In the instant case, special counsel for the Trustees alleges that the Iorizzos have moved for a disqualification order to thwart the recovery of assets that the Iorizzo's have concealed.

Whether or not this allegation is true, the Court is hardly convinced that the motive of the movants is their desire to protect the integrity of the bankruptcy process.

The *Nyquist* Court weighed the need for efficient judicial administration against the potential advantage of immediate preventive measures, and concluded that unless an attorney's conduct tends to 'taint the underlying trial', courts should be quite hesitant to disqualify an attorney. *Id.* The Court further noted that given the availability of federal and state disciplinary machinery, there is usually no need to deal with other kinds of ethical violations in the very litigation in which they surface. *Id.*

In further support of the denial of the motion before the Court is the fact that Mr. Hudtwalker, Mr. LoPresto and the creditors' committees for both the Vantage and the Iorizzo estates have apparently fully considered the potential for any conflict of interest and have agreed that the joint retention of special counsel is in the best interests of all the estates involved. In different but sufficiently analogous situations to the case at bar, the Second Circuit has repeatedly held that once the court is satisfied that a client knowingly and intelligently wishes to proceed with joint representation, the court has met its responsibility and should not obstruct the choice of counsel. *In re Taylor,* 567 F.2d 1183, 1191 (2d Cir.1977) (involving an alleged conflict between an attorney's representation of a grand jury witness and other targets of a criminal investigation); *See also Abraham v. United States,* 549 F.2d 236 (2d Cir.1977); *United States v. Armedo-Sarmiento,* 524 F.2d 591 (2d Cir.1975).

The district court in *Altschul v. Paine Webber, Inc.* recently passed upon a disqualification motion brought on by a defendant who argued that a third party defendant could not retain the same counsel as the plaintiffs. 488 F.Supp. 858, 860 (S.D. N.Y.1980). In *Altschul,* plaintiffs sued Paine Webber, who in turn impleaded plaintiffs' son. Paine Webber argued that there existed a conflict of interests between the plaintiffs and the son which precluded their joint representation, namely that plaintiffs should be suing their son. However, the plaintiffs stated that they had no wish to sue their son and the son stated the same about any desire to sue his parents. There-

fore, the court concluded that their interests were not adverse but instead that they were parallel. *Id.* Likewise, in the case at bar, Harvis & Zeichner represents *parallel* interests, which presents no reason to believe that the firm will compromise its obligation to provide undivided loyalty to each client. *See id.* The *Altschul* Court further reasoned that there was no violation of Canon 9 because there was no "appearance of impropriety" where the plaintiffs and their son had simply and openly exercised their right to choose their own counsel. *Id.* at 861.

Movants argue that a recent bankruptcy decision is dispositive of the issue before this Court. *Matter of Proof of the Pudding,* however, is distinguishable on two grounds. In that case, the Bankruptcy Court was faced with the applications of two creditors' committes of related debtors seeking authorization to employ the same counsel as was retained by the creditors' committee of another related debtor. 3 B.R. 645, 646 (Bkrtcy.S.D.N.Y.1980). In most cases, the Bankruptcy Court has discretion in deciding whether to authorize the retention of counsel. But the Bankruptcy Code leaves no discretion in the Bankruptcy Judge to approve the retention by a *creditors' committee* of an attorney who represents any other entity in connection with the case. 11 U.S.C. § 1103(b). There is no similar prohibition in the Code against a *trustee's* retention of counsel who represents another trustee.

Aside from the Code's express prohibition, the Court in *Proof of the Pudding* also rested its decision on the existence of a potential conflict of interest. 3 B.R. at 647. The facts currently before this Court however, warrant an opposite outcome. *Proof of the Pudding* involved the retention of *general* counsel, whereas the instant case involves *special* counsel. The distinction is most important because in *Proof of the Pudding,* the court found that "a conflict of interest would inevitably arise", *id.,* but in the case at bar, the likelihood of such occurring is not at all clear. This distinction between general and special counsel is em-

phasized by the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Fondiller,* 15 B.R. 890 (Bkrtcy. 9th Cir.1981). In that case, the trustee of the chapter 7 debtor's estate requested authority to employ the same law firm that was retained by the creditors' committee of that estate, as special counsel for the specific purpose of continuing to investigate and attempting to recover the assets concealed or fraudulently conveyed. *Id.* at 891. The *Fondiller* Court, noting that 11 U.S.C. § 327(c) prohibited an attorney who represented a trustee from representing a creditor in connection with the case, held that this prohibition did not apply where counsel was retained by the trustee as special counsel. *Id.* at 892. Although this decision could be assailed as contrary to the literal language of the Code, the Panel's affirmance of the trial court shows the strong need to avoid the "adverse impact on the administration of [the] estate and the attempt to recover assets allegedly concealed or otherwise disposed of." *Id.* at 892–93.

Finally, the case at bar is much more in line with *In re O.P.M. Leasing Service, Inc.,* 16 B.R. 932 (Bkrtcy.S.D.N.Y.1982). In *O.P.M. Leasing,* an order to show cause was brought requesting removal of a trustee of 5 related chapter 11 estates, and the removal of his counsel in an adversary proceeding brought by the trustee to establish ownership rights in certain stock. The trustee who was appointed·in the personal chapter 7 estate of one of the principals involved, asserted that there would exist a conflict of interests between the five debtors if the property were recovered. *Id.* at 936. The court refused to disqualify either the trustee or counsel, observing that the expense of separate trustees and counsel was not warranted where "the court [could] be called upon to protect and allocate ownership interests amongst the competing bankruptcy estates," and that a conflict of interest could be resolved by the appointment of special counsel. *Id.* at 934. In the instant case, special counsel has been appointed to investigate and recover assets of all the related estates, leaving general counsel and

this Court to allocate ownership interests at a later date.

The motion to reconsider the previous orders of this Court authorizing the retention of Harvis & Zeichner as special counsel to the trustee for the Iorizzo estate and the five corporate estates is denied.

So Ordered.