### In re SAMBO'S RESTAURANTS, INC., Debtor.

### Bankruptcy No. LA–81–15593(CA).

United States Bankruptcy Court,
C. D. California.

April 13, 1982.

Stutman, Treister & Glatt, Los Angeles, Cal., new attys., for Sambo's.

Finley, Kumble, Wagner, Heine, Underberg & Manley, Los Angeles, Cal., Sambo's Attorneys at time of Order dated 4/13/82.

Arthur Marquis, Los Angeles, Cal., U. S. Trustee.

MEMORANDUM OF DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW (Objection of United States Trustee to Employment of Finley, Kumble, Wagner, Heine, Underberg & Manley As Counsel For The Debtor)

CALVIN K. ASHLAND, Bankruptcy Judge.

The United States Trustee objected to the employment of Finley, Kumble, Wagner, Heine, Underberg & Manley as counsel for the debtor in possession, Sambo's Restaurants, Inc. (SRI), on the grounds that Finley Kumble is not disinterested as required by Bankruptcy Code § 327(a). [11 U.S.C. § 327(a)] Hearings were held on

---

March 1, 5, and 11, 1982. Proposed findings of fact and conclusions of law and memoranda were thereafter filed by the United States Trustee and Finley Kumble.

## DISCUSSION

First, a brief discussion of the lease cancellation program, the motion to appoint a trustee, the role of City Investing Company and GDV, Inc., and the statements of David Fain Brown in court on March 5, 1982 should be helpful.

Before bankruptcy, SRI closed a significant number (447) of its restaurants. It negotiated with the landlords of these closed restaurant leaseholds and entered into lease cancellation agreements which were subject to the approval of the bankruptcy court. (This discussion of the lease cancellation program should not be construed to characterize the legal relationship that might have arisen between any landlord and SRI.)

Generally, the lease would be cancelled. In exchange for the furniture, fixtures, and equipment on the premises, the landlord waived all claims for breach of the lease against the estate and other entities liable on the lease. In a single application, SRI sought court approval of 255 lease cancellation agreements. The application was first set for hearing on December 29, 1981 and continued from time to time until January 28, 1982. The application was opposed by the Official Creditors Committee which also sought the appointment of a trustee. The committee felt that a marketing program to sell the leaseholds and related furniture, fixtures, and equipment in the closed restaurants would produce as much as $10 million cash for the estate.

SRI believed it had selected the least valuable of the leaseholds for the lease cancellations. Although it may have undervalued some locations, it felt that in the aggregate the program and locations selected comported with sound business judgment. The reduction of liability of SRI to lessors would also benefit joint venture groups and consequently reduce the possible liability of SRI to those groups and their individual joint venturers. These later claims possibly could be in significant amounts not limited by Bankruptcy Code § 502(b)(7).

The motion for the appointment of a trustee challenged the ability of present managment. The position taken by SRI and the papers it filed strongly supported the competence of its chief executive officer and his management team. It is erroneous to characterize the efforts of counsel for the debtor to resist appointment of a trustee and to maintain SRI as a debtor in possession as their commitment to preserve the position of the chief executive officer.

On the day this bankruptcy case was filed GDV, Inc. (GDV) owned all the issued and outstanding preferred stock of SRI. City Investing Company (City) owned at least 80.3% of GDV. GDV had paid approximately $28.7 million to purchase this preferred stock. The purchase permitted GDV to designate a majority of the board of directors of SRI in the event SRI failed by September 30, 1981 to pay four quarterly dividends on the preferred shares issued to GDV. SRI failed to pay the quarterly dividends and on January 5, 1982 GDV exercised its rights to designate a majority of the board of directors of SRI. GDV designated Daniel E. Lyons and David Fain Brown as directors.

After the designation of Brown and Lyons as directors, there were four of seven directors on the board that had been designated by GDV. An executive committee was formed consisting of the four GDV-designated directors and Daniel R. Shaughnessy (the Chief Executive Officer of SRI). This committee was authorized to manage the Chapter 11 case, supervise litigation, hire and terminate officers and employees, and engage counsel or consultants, among other things. No significant decisions were to be made without prior discussion with the board.

Thereafter, actions were taken which were directed by the GDV-designated directors, particularly by Brown and Lyons, without formal meetings of the executive

committee and without consultation or discussion by the committee with the board. Any ratification by the board was after the fact and after the action initiated by the GDV-designated directors had been done. Little by way of recission or correction could have been accomplished.

David Fain Brown is general counsel and vice-president of both GDV and City. On March 5, 1982 Brown appeared in court and stated that City through its ownership of GDV had a conflict of interest with SRI and knew it. The ownership of the preferred stock put them in conflict with the common shareholders and the creditors including the landlords. He stated that the conflict existed at the level of the board of directors. City bargained for the conflict as it had paid for the right to own and control the company. In such position, City felt that it could control the law firm hired by SRI, that in fact the law firm would be hired by City, and that whoever was hired would do what they were told by City. He further said that he would come each day to the court and report what it was that City had told the law firm to do. City wanted a law firm to work with SRI that City knew could relate to it and tell it what was going on.

The relationship of Finley Kumble and Marshall Manley, one of its partners, to City and GDV is further set forth in more detail below. Finley Kumble asserts a lack of representation of City and GDV but in so doing it does not show the overall involvement which shows a close relationship of Finley Kumble to City and GDV. This on-going relationship presents a general conflict. The interests of City and GDV and, therefore, Finley Kumble are inimical to those of SRI.

The trustee with the court's approval may employ attorneys that do not hold or represent an interest adverse to the estate, and that are disinterested persons. § 327(a). The function of the attorney is to represent the trustee in carrying out the duties of the trustee. § 327(a). "Trustee" includes "debtor in possession." Local Bankruptcy Rule 1001(b)(3). Debtor in possession means the debtor, except when a trustee is appointed. § 1101(1).

A "disinterested person" is defined in § 101(13) to include a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker . . . , or for any other reason." § 101(13)(E).

Under the Bankruptcy Act, Bankruptcy Rule 10–206(a) required that an attorney appointed to represent a Chapter X trustee be disinterested as specified in Rule 10–202(c)(2). The Advisory Committee's Note to Rule 10–202(c)(2) made clear that the statutory guidelines for determination of disinterestedness were not exclusive. The court on other bases might find a person lacking in disinterestedness.

Bankruptcy Code § 101(13)(E) was adopted from Bankruptcy Rule 10–202(c)(2)(D). "It appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." 2 Collier on Bankruptcy ¶ 327.03[f], p. 327–16 (15th Ed. 1981). The purpose of the rule is to prevent a conflict without regard to the person's integrity. Conflicting loyalties may arise even from remote or indirect associations. 2 Collier ¶ 327.03[f]. The goal should be not to prevent actual evil in this particular case, but the tendency to evil in all cases.

Pursuant to § 405(d) of the Bankruptcy Reform Act of 1978, the Federal Rules of Bankruptcy Procedure apply to the extent they are not inconsistent with the Bankruptcy Code. Rule 10–206(a) mandated disinterestedness only in the case of counsel retained by the trustee. To that extent, Rule 10–206(a) is inconsistent with § 327(a). 5 Collier on Bankruptcy ¶ 1107.03 at 1107–8 (15th Ed. 1981).

A debtor in possession has all the rights and powers of a trustee and must perform all the functions and duties of a trustee. § 1107(a). The debtor in possession is not required to file the list of creditors, sched-

ules, and statement of affairs required by § 521(1). This is a duty left to the debtor. Nor is the debtor in possession required to investigate and report on the acts and conduct of the debtor. These duties are to be performed by an examiner if one is appointed. §§ 1106(a) and (b).

Section 1107(b) further provides that despite the requirement of disinterestedness in § 327(a), a person is not disqualified for employment under § 327 by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case. But for this exception, § 327(a) applies. In a Chapter 11 case, the debtor is both debtor and debtor in possession. In the latter capacity, it exercises the statutory powers of a trustee. It is not appropriate in a case to have separate attorneys as general counsel, one for the debtor and another for the debtor in possession. The same attorney represents both.

In *In re Chicago Rapid Transit Co.*, 93 F.2d 832 (7th Cir. 1937), the reorganization trustee (Bankruptcy Act § 77 B) sought to employ as his attorneys, a firm which represented a large secured and unsecured creditor. The creditor was also one of the debtor's largest suppliers. Its interests were adverse to the debtor's. The reasons given by the court in disqualifying the law firm could as well apply to counsel hired by a debtor in possession as by the trustee. The court asked two questions: If the trustee were acting for himself as debtor instead of for himself as trustee of the debtor, and was resisting a large claim, would he employ the attorney for the creditor (although his employment be in other matters) to represent him? Would the members of the bar—the group who believe the practice of law is a profession not a business—accept employment by a debtor when they were regularly employed by the creditor? *Chicago Rapid Transit Co.*, at 838. The court considered not the answers to these questions alone, but the nature and purpose of the proceeding in which the services were to be rendered. When the plan would be submitted, there predictably would be a "sharp conflict of interest between stockholders and secured creditors, between unsecured creditors and secured creditors, between unsecured creditors and stockholders", at 838. City and GDV have interests which conflict with other interests in this case.

In the case of *In re Heatron, Inc.*, 5 B.R. 703, 6 B.C.D. 883, 2 C.B.C.2d 1054 (Bkrtcy., W.D.Mo., 1980) the debtor in possession sought to employ an attorney who had represented the debtor before filing, had assisted in the preparation of the petition, and was one of the ten largest creditors. The court applied §§ 327(a) and (b) and the exception of § 1107(b). There was an issue of whether the attorney had an interest adverse to the debtor. The court found that where the interests of the debtor and attorney (as a creditor) are similar, then there is no adverse interest. The employment was authorized subject to review from time to time and subject to reconsideration upon objection by creditors. Here, it is not the representation of the debtor before the case was filed but the representation of City and GDV that the United States Trustee contends disqualifies Finley Kumble from representing SRI.

The case of *O. P. M. Leasing Services, Inc.*, 16 B.R. 932, 8 B.C.D. 841, (S.D.N.Y.1982) is unique. The same individual was the Chapter 11 trustee for both O. P. M. and its parent Cali Trading International Ltd. He had hired the same counsel in each case. Some months passed and then a Chapter 7 trustee in a related case, and who was involved in litigation with the Chapter 11 trustee, raised the issue of conflict. The objection was not only to the conflict of the trustee's counsel, but also to the trustee.

The court observed that the objection of the Chapter 7 trustee was part of a litigation strategy to seek leverage in an adversary proceeding. The court found that there was a unity of interest between the two chapter 11 estates and felt that injury to the estates was not imminent. The court took a wait-and-see approach and felt that a sensible solution could be worked out without the need for a resolution through

litigation. To that extent, the approach was similar to that of the court in *Heatron.* In this case the time to set the perspective is now in the exercise of foresight, not later as suggested in *Heatron* and *O. P. M.* when the perspective may be one of hindsight.

The trustee cites Canon 5 of the Code of Professional Responsibility wherein a lawyer should exercise independent professional judgment on behalf of a client. Ethical Consideration 5–1 states that: "[t]he professional judgment of a lawyer should be exercised . . . solely for the benefit of his client and free of compromising influences and loyalties." Ethical Consideration 5–18 states as follows:

A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case, the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present."

Finley Kumble was employed to represent SRI, the debtor in possession. This entity, although controlled by City and GDV, owes a general duty of loyalty to the estate and to all creditors.

The disqualification of Finley Kumble as general counsel does not in itself resolve the problems of the representation of the debtor. William A. Buzick, who was recognized as an independent director of SRI, testified concerning a board of directors meeting on March 9, 1982 and the influence of City upon the board of directors and the affairs of the corporation. The first item on the agenda was the authority and responsibility of the new Chief Executive Officer. He was particularly concerned regarding the

scope of his authority as it had been represented to him before he agreed to become Chief Executive Officer of SRI and, among other things, his ability to have counsel of his choice. The matter was not resolved but tabled until a meeting to be held on April 12, 1982.

Finally, there is the matter of the participation of the United States Trustee as to the employment of counsel by the debtor. Despite Local Bankruptcy Rule 2006(b), the U. S. Trustee says it has been the practice in this district to submit applications to employ counsel first to the United States Trustee for his approval or disapproval. 28 U.S.C. § 581(a)(9) provides for the appointment of a U. S. Trustee in this district. The U. S. Trustee is to supervise the administration of Chapter 11 cases. 28 U.S.C. § 586(a)(3). It was intended by Congress that the U. S. Trustees would be the repository of the administrative functions previously performed by bankruptcy judges and that they would serve as watchdogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena. House Report No. 95–595, 95th Cong., 1st Sess. 88 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. The U. S. Trustees were intended to be enforcers of the bankruptcy laws particularly when an action taken or proposed would deviate from the standards established by the Bankruptcy Code. *Id.* at 109. It is not only difficult and improper but nearly impossible for a bankruptcy judge to investigate beyond the four corners of an application to employ counsel. Creditors do not always become involved in such activity. The official creditors committee in this case is more closely aligned with the interests of the new board of Sambo's than would ordinarily be expected. Therefore, under 28 U.S.C. § 586(a)(3) the U. S. Trustee has a duty to see the standards of Bankruptcy Code § 327(a) enforced.

### FINDINGS OF FACT

1. On November 27, 1981, SRI filed a voluntary Chapter 11 petition.

2. SRI has remained as debtor in possession for all times following the filing of the Chapter 11 petition.

3. Shortly after November 27, 1981, the following firms, which had represented SRI in certain matters prior to that date, were retained by SRI as debtor in possession to handle the matters designated:

a. Stutman, Treister & Glatt (ST&G): special insolvency, reorganization, and bankruptcy counsel.

b. Gibson, Dunn & Crutcher (GD&C): corporate securities matters; negotiations and transactions with lenders, director and shareholder meetings, employee benefit plans, tax matters, general corporate and business law, and continued representation of SRI in cases pending in the U. S. District Court, Southern District of New York.

c. Mitchell, Silberberg & Knupp (MS&K): certain litigation involving individual joint venture and group joint venture interests (commonly referred to as Fraction-of-the-Action Programs) including class actions pending in the U. S. District Court for the Central District of California. On January 11, 1982, although a settlement itself was not approved or authorized, SRI was authorized to take the steps necessary to have the district court first approve a settlement of the class actions. MS&K also was authorized to assist ST&G in litigation matters in the bankruptcy court including the lease cancellation program.

d. Hill, Wynne, Troop & Meisinger (HWT&M): certain other litigation matters.

e. Murphy, Thornton, Hinerfeld & Cahill (MTH&C): certain other litigation matters.

4. Applications to employ said firms were submitted by SRI, approved by the United States Trustee, and approved by the Court.

5. At the time of filing, City owned in excess of 80.3% of GDV which in turn owned 100% of the preferred stock of SRI. City may be deemed the beneficial owner of the two series of preferred stock which are as follows:

a. $1.84 cumulative convertible voting preferred stock (593,875 shares) bought by GDV on November 16, 1979 for $13,-659,125. This stock has a liquidation preference of $23 per share and is convertible on a four-for-one basis into 2,375,500 shares of common stock. This represents approximately 16% of SRI common outstanding after conversion, assuming the $1.45 preferred stock was not converted.

b. $1.45 cumulative convertible voting preferred stock (1,034,483 shares) bought by GDV on July 29, 1980 for $15,000,003. This stock has a liquidation preference of $14.50 per share and is convertible on a four-for-one basis into 4,137,932 shares of common stock. This represents approximately 24% of SRI common outstanding after conversion, assuming the $1.84 preferred stock is not converted.

6. As of February 6, 1981, there were 12,841,518 shares of SRI's common stock outstanding.

7. The Articles of Incorporation of SRI provide that if SRI is in default at any time after September 30, 1981 in the payment of four or more quarterly dividends on either series of the preferred stock, the holders will be entitled to elect a majority of the Board of Directors of SRI.

8. Marshall Manley is a partner with Finley, Kumble, Wagner, Heine, Underberg & Manley. He has represented City and its subsidiaries since 1969. The extent of the relationship is set forth below:

a. City is a company with between 6.8 billion dollars and 7.6 billion dollars in assets. City and its subsidiaries owe a total in excess of one billion dollars to various institutional lenders and it is likely that a significant portion is owed by City and its subsidiaries to lenders who are also creditors of SRI. Citibank, a creditor of SRI, is lead bank with responsibility for substantial loans made to City and its subsidiaries. Citibank is a member of the unsecured creditors committee in this Chapter 11 case.

b. Manley first represented City in 1969. In 1973 he joined the law firm Manatt, Phelps, Rothenberg & Tunney and City became a client of that firm.

c. Finley Kumble has represented and does represent City and its subsidiaries in various litigation matters. In addition, Finley Kumble does tax work, antitrust work, and general corporate work for City and its subsidiaries. Finley Kumble does legal work for subsidiaries of City including GDV, Motel 6, Rheem Manufacturing Company, Southern California Savings & Loan, Southern California Finance Corporation, and World Press Color.

d. Finley Kumble is a subtenant of City at 9100 Wilshire Blvd., Beverly Hills, and pays rent directly to City. At the present time, Finley Kumble has part of a floor for their offices, and City has the rest of the floor and the entire ninth floor.

e. Finley Kumble received approximately $500,000 to $1,000,000 in 1981 for services rendered to City.

f. Manley personally has several business relationships with directors and officers of City and subsidiaries of City, including the following:

1. Manley is director and chairman of the board for a proposed Beverly Hills bank. Virginia Ortliev, Assistant to the Chairman of the Board for City, also sits on the Board of the proposed bank.

2. Manley is chairman of the board of a title insurance company in Orange County. David Brown, General Counsel and Vice President of City and GDV, and who sits on the board of SRI, also sits on the board of the title insurance company.

3. Manley has a partnership interest in GD Investments. He owns 50% in one unit of the limited partnership. The other 50% is owned by Daniel E. Lyons and Virginia Ortliev. Lyons is Executive Vice President and Chief Financial Officer of City and GDV. He also serves as a director for both City and GDV, and sits on the board of SRI.

4. Manley is owner of ⅔ of ¾ of a unit in a limited partnership called Suite Associates. The other ⅓ is owned by Joe Demery who is a controller for City.

g. Finley Kumble has represented officers and directors of City and its subsidiaries. Those persons include, but are not limited to, the following:

1. Fred Sullivan—Director of City.

2. George Scharfenberger—Chief Executive Officer of City.

3. Daniel Shaughnessy—when he was Chief Executive Officer of Motel 6.

4. Peter Huang—President and Director of City.

5. Daniel Lyons—Director of City and GDV.

6. David Brown—General Counsel and Vice President of GDV and City.

7. Joe Demery—Controller of City.

8. Lester Mantell—Tax Counsel for City.

9. Jack McHugh—Corporate Secretary for City.

10. Virginia Ortliev—Assistant to Chairman of the Board of City.

h. Certain of the officers and directors of City including David Brown are personal friends of Manley.

9. Before January 15, 1982 Finley Kumble represented SRI in a single administrative proceeding in New York involving an alleged human rights violation. That proceeding is now in the appellate stage and Finley Kumble continues to represent SRI in that matter.

10. In mid-1981, City learned that it had been named in a pleading as a party cross-defendant along with SRI in an action involving certain SRI joint ventures. City asked Finley Kumble to review the pleading and consult with counsel for SRI.

11. In or about December, 1981 City and GDV requested Finley Kumble to provide legal services to City and GDV, in connection with SRI's Chapter 11 case. In furtherance of that purpose, a number of discussions were had with counsel for SRI and representatives of lenders. There were in excess of a dozen discussions in which Manley represented the interests of City and GDV. Those discussions included meetings

with representatives of SRI on December 30, 1981, January 9, and January 11, 1982, as well as meetings with counsel for the banks and insurance company lenders who are creditors of SRI.

12. During the month of December, 1981, and while representing City and GDV, Manley asked representatives of SRI about the amount of SRI's tax loss carry-forwards and indicated that City might be interested in acquiring SRI and its tax losses.

13. At a meeting on January 9, 1982 in Santa Barbara, Brown stated to Thornton that the relationship of City to the lenders was of greater importance than City's relationship to SRI and that the decision had been made at the highest levels of City and Citibank that Daniel R. Shaughnessy could no longer be tolerated as chief executive officer of SRI.

14. Before January 15, 1982 Manley advised various counsel for SRI that the retention of Finley Kumble as counsel for SRI was being contemplated. Manley was advised by said counsel that there was a conflict of interest by reason of Finley Kumble's representation of City and GDV.

15. On January 5, 1982 GDV exercised its privilege as preferred shareholder and selected as directors of SRI Lyons and Brown. As indicated, Lyons is Executive Vice President and Chief Financial Officer of City and GDV. He also serves as a director for City and GDV. Brown is Vice President and General Counsel of City and GDV.

16. As of January 5, 1982 the Board of Directors of SRI consisted of:

David Fain Brown
Daniel E. Lyons
Frank R. Moothart
John J. Quirk
William A. Buzick, Jr.
Frederic E. Giersch, Jr.
Daniel R. Shaughnessy

17. As of January 5, 1982 GDV held a majority on the Board of Directors of SRI. The City/GDV personnel on the board of SRI consisted of Brown, Lyons, Moothart, and Quirk.

18. On January 12, 1982 the date of the § 341(a) meeting of creditors, Brown advised Thornton that Shaughnessy would have to be replaced as chief executive officer.

19. On January 14, 1982 the full Board of Directors of SRI consisting of those persons previously described met telephonically. The minutes for said meeting indicated, among other things, that the following actions were taken.

a. An executive committee was formed consisting of the following directors:

Daniel Lyons
David Fain Brown
William A. Buzick, Jr.
John J. Quirk
Daniel R. Shaughnessy

b. The executive committee was formed for the purpose of circumventing the perceived conflict between Shaughnessy and the Official Creditors Committee. Its powers were to be as follows:

1. To manage the Chapter 11 proceedings relating to the bankruptcy.

2. To supervise all litigation matters.

3. To hire and/or terminate officers and other employees.

4. To engage counsel and/or consultants.

5. All other powers authorized by the laws of the State of California.

c. The committee was not to make any significant decisions without prior discussion with the Board of Directors of SRI.

d. The retention of the firm of Finley, Kumble, Wagner, Heine, Underberg & Manley was approved. The firm was to be engaged to represent SRI as co-counsel with SRI's then employed outside counsel.

20. The executive committee was formed at the instigation of the directors selected by GDV and consisted of a majority of City/GDV personnel. The two non-GDV-placed directors on the committee were Shaughnessy and Buzick.

21. No formal executive committee meetings or action has ever taken place.

Further, Buzick was never informed or took part in any Executive Committee decisions. The Executive Committee made no recommendations to the Board of Directors regarding any matter.

22. On January 15, 1982 a meeting with Bankruptcy Judge Calvin K. Ashland took place. Present were Richard Neiter and Isaac Pachulski of Stutman, Treister & Glatt; J. Ronald Trost of Sidley & Austin; Ronald Gordon of Buchalter, Niemer, Fields, Christie & Younger for the Official Creditors Committee; James T. Eichstaedt, Arthur N. Marquis, and David Hagen for the Office of the United States Trustee; Marshall Manley of Finley Kumble; and David Brown as a director for SRI. Others were present as well. At the meeting it was announced that Ronald Gordon would resign as lawyer for the Creditors Committee due to a potential conflict arising out of his firm's representation of Touche-Ross and the possibility that Touche-Ross might be called upon to testify in the pending motion to appoint a trustee. J. Ronald Trost would represent the committee. Manley indicated that Finley Kumble would file an application to represent SRI as co-counsel and that SRI had no objection to Trost representing the Creditors Committee. Trost stated that the Committee had no objection to SRI's retention of Finley Kumble as co-counsel. It was further stated that Manley and Brown had had discussions with representatives of the Creditors Committee and that it was the desire of both Manley and Trost to postpone the motion for the appointment of a Chapter 11 trustee and the lease cancellation application hearing.

23. The first notice to ST&G of the January 15, 1982 meeting was through a court clerk. They were not told of said conference by Finley Kumble. Further, ST&G was not told in advance of the meeting as to the resignation of Ronald Gordon, of the decision that J. Ronald Trost would represent the Creditors Committee, or of the decision to continue the Chapter 11 trustee motion. ST&G was not involved in any discussions among Brown, Manley, and the Committee for the purpose of postponing the Chapter 11 trustee motion or continuing the hearing on the lease cancellation application.

24. On January 15, 1982, an Application of Debtor-in-Possession to Employ Counsel (Finley Kumble) was submitted to the Court. This application stated, among other things, that Finley Kumble was to be co-counsel with ST&G and that they would represent SRI in various matters including legal services related to insolvency, reorganization, bankruptcy law; negotiations and transactions with lenders and other holders of obligations relative to preparing and obtaining an approved Plan of Reorganization; and real estate and litigation matters.

25. Submitted with the application was a Declaration of Proposed Attorney signed by Manley and which stated as follows:

"The firm prior to the date of this Declaration, represented GDV, Inc., the preferred stockholder, of the Debtor, with representation on the Debtor's board of directors. The firm was retained by GDV, Inc. and/or City Investing Company to investigate the circumstances surrounding the filing of the Chapter 11 case by the Debtor and its status in the pending proceeding. The firm will not represent GDV, Inc. or City Investing Company in any respect concerning this estate on and after the date of the entry of an order retaining the firm as Debtor's counsel. The firm has also represented the parent company of GDV, Inc., City Investing Company, but not in relation to Sambo's Restaurants, Inc. except as set forth above."

The declaration did not fully disclose the nature or extent of Finley Kumble's relationship with City and GDV.

26. Although the application provided for the United States Trustee to indicate his approval or non-approval, the application was not submitted to the United States Trustee but was submitted directly to the Court. Approval of the United States Trustee was not required by Local Bankruptcy Rule 2006(b). The court approved the application on January 15, 1982. The

order approved the retention of Finley Kumble as co-counsel, not as sole counsel.

27. Some time before January 26, 1982 Lyons informed Thornton, then General Counsel for SRI, that City had a lot of loyalty to Shaughnessy but that there was pressure from certain lenders and, therefore, Shaughnessy had to be replaced.

28. Although Manley testified on March 1, 1982 that Finley Kumble wanted ST&G to remain and that Finley Kumble had no difficulty being co-counsel with the other firms, it was contemplated by City/GDV personnel shortly after the order approving the retention of Finley Kumble that ST&G would be removed. On January 25, 1982 Manley informed Thornton that ST&G was going to be removed as counsel for SRI within one week.

29. On January 26, 1982 at the offices of City Investing, 9100 Wilshire Blvd., Beverly Hills, a meeting of all the directors of SRI was held. Manley on behalf of Finley Kumble was present as was Edward Medvene of Mitchell, Silberberg & Knupp. After considerable discussion, the board unanimously agreed to proceed with the application to enter into lease cancellation agreements with various landlords and with the hearing which had been calendared for January 28, 1982. Manley also recommended going ahead with the agreements. ST&G and Mitchell, Silberberg & Knupp were advised to proceed with the lease cancellation hearing.

30. On January 27, 1982 from approximately 9:00 p. m. to 11:00 p. m. at the offices of Sidley & Austin, attorneys for the Creditors Committee, a meeting took place regarding the lease cancellation hearing. Present were Gary L. Blum and Manley for Finley Kumble; SRI directors Lyons, Brown and Quirk; Robert White and George Wade for various lenders; J. Ronald Trost for the Creditors Committee; and several other persons including Brian Marcel of Citibank. ST&G was not notified of the meeting but Medvene was invited to give a presentation as to why the lease cancellation program was good for SRI. After Medvene's presentation, and after further

discussions, a compromise was reached among representatives of the Creditors Committee, lenders, and SRI by Brown, Lyons and Quirk. No non-City or non-GDV personnel on the Executive Committee were informed of or were present at the meeting. No information different from that presented at the January 26, 1982 board meeting was presented at this meeting.

31. At the same meeting on January 26, 1982 Marcel of Citibank questioned Lyons at length and aggressively as to why SRI had not hired a person brought to SRI for hiring by Citibank. Lyons was also questioned by Marcel regarding the status of Shaughnessy as Chief Executive Officer and why he had not been removed.

32. On January 28, 1982, at the hearing on the lease cancellation application, Manley stated that SRI was withdrawing the application. This withdrawal was based on the decision of three City personnel on SRI's Executive Committee.

33. Before the announcement, Finley Kumble did not notify ST&G of the proposed compromise and the decision to withdraw the lease cancellation application. Neiter was not notified as to any compromise reached as to the landlords with whom he had contact before the hearing.

34. Early on January 28, 1982 at approximately 7:00 a. m., Medvene notified Neiter of ST&G of certain aspects of the proposed compromise. Neiter attempted to contact Manley at the Finley Kumble offices, but his telephone calls were not returned.

35. After announcing in court the withdrawal of the lease cancellation application, Manley refused to indicate to either Neiter or Medvene what the proposed compromise was, and further advised them that they speak at their peril. The specific words used were "You speak at your peril."

36. In or about January, 1982 negotiations had been initiated regarding a new Chief Executive Officer for SRI. Counsel for SRI other than the Finley Kumble firm were deliberately excluded from these negotiations. The negotiations were also not

made known to the non-City/GDV members of the Board of Directors of SRI and they did not participate in the negotiations.

37. On or before February 1, 1982 Finley Kumble was preparing, on the instructions of City/GDV personnel on the Board of SRI, 43 substitutions of counsel. Said substitutions included one for ST&G although ST&G had not resigned. The preparation and ultimate presentation of the substitutions was not made known to the non-GDV placed directors of SRI until after the fact.

38. The decisions to withdraw the lease cancellation application, to serve 43 substitutions of attorneys, and to enter into negotiations for a new chief executive officer were all "significant decisions" contemplated by the board of directors in their January 14, 1982 resolution. Significant decisions were not to have been made without prior consultation with the Board of Directors of SRI.

39. The decisions were made without formal Executive Committee action and without consultation with all members of the Executive Committee. The decisions were made without prior consultation with the Board of Directors of SRI. Each decision was made initially by City/GDV personnel on the Board of Directors of SRI in conjunction with Finley Kumble.

40. At the hearing on January 28, 1982 a request was made by a representative of the United States Trustee to Manley that he furnish a copy of the application to employ Finley Kumble to the United States Trustee. The application was received by the United States Trustee on February 2, 1982.

41. On February 1, 1982, on the instructions of Manley, 48 substitutions of attorneys were delivered to Thornton. The substitutions included one for ST&G; were dated February 1, 1982; included some notices of association of counsel (5); and, included matters which had been litigated extensively in various courts over a period of time by counsel being replaced.

42. On February 1, 1982, Medvene submitted a letter of resignation to the Board of Directors of SRI.

43. On February 2, 1982, ST&G, by Neiter, submitted a letter of resignation to the Board of Directors of SRI.

44. On February 3, 1982, Thornton, Vice President and General Counsel of SRI, submitted a letter of resignation to the Board of Directors of SRI.

45. On February 4, 1982, Gibson, Dunn & Crutcher, by Arthur Schmutz, submitted a letter of resignation to the Board of Directors of SRI.

46. The reasons for the letters of resignation were that decisions were not being made in the best interests of SRI, and that decisions were being made without consulting co-counsel.

47. On February 3, 1982 in the courtroom of Bankruptcy Judge Calvin K. Ashland, Isaac Pachulski on behalf of ST&G informed the court that the firm was resigning and presented an application to withdraw as counsel. At that time, the court indicated its concern as to Finley Kumble's prior representation of the controlling preferred stockholder and to its being sole counsel in the Chapter 11 case.

48. On February 8, 1982 a meeting of the Board of Directors of SRI took place at the City offices in Beverly Hills with all directors present. (Quirk was present by telephone). At that meeting, the following resolutions were adopted:

a. The resignations of Stutman, Treister & Glatt, Gibson, Dunn & Crutcher, and Mitchell, Silberberg & Knupp were accepted. Brown, Lyons, Moothart, and Quirk, the GDV-placed directors, voted to accept the resignations. The non-GDV/City directors voted against.

b. James Butler, a partner with Finley Kumble, was elected as Assistant Secretary. The vote was the same as in Paragraph a.

c. The employment of Finley Kumble as general outside counsel was approved. Two of the non-GDV/City directors voted against the retention and one abstained. All the GDV/City-placed directors voted for the resolution.

d. The employment of Robert K. Luckey as Chief Executive Officer was unanimously approved. (Shaughnessy abstained). The first notice to the independent directors of the negotiations with Luckey and the nature of the employment contract took place at this meeting.

e. Several other matters, including ratification of the lease cancellation application withdrawal (Buzick and Giersch abstained; Shaughnessy voted against; the GDV/City-placed directors voted for it.) and authority for the independent directors to obtain outside counsel. (unanimous).

49. On February 10, 1982, at a hearing on his request for an order directing the appointment of an examiner, the U. S. Trustee received such an order. At that hearing, the U. S. Trustee indicated his intention to request a hearing on the application of the debtor to employ Finley Kumble. The court indicated that Finley Kumble had been authorized as co-counsel, not as sole counsel.

50. On February 19, 1982, in the courtroom of Bankruptcy Judge Calvin K. Ashland, the U. S. Trustee cleared the date of March 1, 1982 for a hearing on the application. The court designated the manner of notice which was subsequently complied with by the U. S. Trustee.

51. A Notice of Hearing on the Objection of the United States Trustee to Application of Debtor to Employ Counsel was served on the Creditors Committee, all SRI counsel, the ten largest unsecured lenders and the ten largest trade creditors on February 22, 1928. The notice was sent to those persons who had requested special notice (133) on February 23, 1982.

52. On February 24, 1982 Comments of United States Trustee Re Application of Debtor to Employ Counsel were served on Finley Kumble. The comments indicated statutory authority dealing with the employment of professionals, some case law, and the failure of Finley Kumble adequately to disclose its relationship to City and GDV.

53. Supplementary declarations were not filed by Finley Kumble until March 1, 1982, the day of the hearing on the U. S. Trustee's objection. At the hearing, Manley requested a continuance until after March 9, 1982, a date on which the board of SRI was to meet. Manley represented to the court that the alleged conflict of interest would be brought to the attention of the board for whatever action it deemed appropriate.

54. On March 5, 1982, at a continued hearing on the U. S. Trustee's objection, Brown, director of SRI and officer of GDV and City, addressed the court. He stated in substance that a conflict existed at the board level of SRI due to City's position as a preferred shareholder and due to its control of a majority of the Board.

55. On March 9, 1982, at a meeting of the board of directors of SRI held in Santa Barbara, the conflict situation of Finley Kumble with SRI was not discussed. There were discussions between SRI's new Chief Executive Officer Robert Luckey and certain members of the board in which Luckey indicated he did not want Finley Kumble to represent SRI. He further indicated he wanted return of any authority delegated to the Executive Committee, there no longer being a need for such a committee. The matter was tabled without any resolution.

## CONCLUSIONS OF LAW

1. Each of the foregoing findings of fact which may be construed as a conclusion of law is hereby deemed to be a conclusion of law, and each of the following conclusions of law which may be construed as a finding of fact is hereby deemed to be a finding of fact. The same construction is to be given any finding of fact or conclusion of law contained in the discussion in this memorandum.

2. 11 U.S.C. § 327 of the Bankruptcy Code sets the standards by which a trustee or debtor in possession retains a professional person. The person to be employed must not hold or represent an interest adverse to the estate and must be a disinterested person. The court must approve the employment.

3. Local Bankruptcy Rule 2006 (Central District—California) is an adjunct to 11 U.S.C. § 327 and states that an application to employ a professional person must include a statement as to the other person's connections with the debtor, the creditors, or any other party in interest, and their respective attorneys and accountants.

4. A "disinterested person" is defined in 11 U.S.C. § 101(13).

5. 11 U.S.C. § 101(13)(E) states that a "disinterested person" means a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reasons."

6. Finley Kumble, by reason of its relationship with City and GDV, has an interest materially adverse to the interest of the estate and to the common stockholders.

7. Finley Kumble, by reason of its past and present representation of City and GDV, represents an interest adverse to the estate.

8. Finley Kumble did not make full disclosure at the time of its application to be employed (January 15, 1982) as to the nature and extent of its relationship with GDV and City, or as to the nature and extent of its representation of GDV in matters involving SRI.

9. The employment of Finley Kumble as general counsel by SRI is not in the interests of the debtor, the estate, creditors, and equity security holders.

10. For the foregoing reasons, the employment of Finley Kumble should not be approved.

ORDER SUSTAINING OBJECTION OF UNITED STATES TRUSTEE TO EMPLOYMENT OF FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG & MANLEY AS COUNSEL FOR THE DEBTOR.

The objection of the United States Trustee to the Employment of Finley, Kumble, Wagner, Heine, Underberg & Manley as counsel for the debtor was properly noticed, and was heard before Bankruptcy Judge Calvin K. Ashland on March 1, 5, and 11, 1982. Present were Arthur N. Marquis for the United States Trustee for the Central District of California, James T. Eichstaedt; Marshall Manley, Gary L. Blum, and Daniel A. Zimmerman of Finley, Kumble, Wagner, Heine, Underberg & Manley.

Evidence, both oral and documentary, was presented by both sides, the cause was argued and submitted for decision, and the court has made and filed its written memorandum of decision, findings of fact, and conclusions of law.

IT IS ORDERED, ADJUDGED AND DECREED that:

The Objection of the United States Trustee to the Employment of Finley, Kumble, Wagner, Heine, Underberg & Manley as counsel for Sambo's Restaurants, Inc. is sustained. Said firm is directed to take those steps necessary to cease its representation of Sambo's Restaurants, Inc. in such a manner as to not prejudice the debtor.