**In re N.S. GARROTT & SONS.**

**In re EASTERN ARKANSAS PLANT-ING COMPANY, Debtors.**

**Bankruptcy No. JO 83–215.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

March 26, 1986.

Richard Frockt, Stewart E. Bland, Barnett & Alagia, Louisville, Ky., James E. Smith, Jr., Little Rock, Ark., for debtors.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On January 22, 1986, the United States District Court for the Eastern District of Arkansas, Jonesboro Division, reversed this Court's order entered on 7th day of January 1986, and remanded the order for additional findings and adjudication consistent with the District Court's opinion. This memorandum is issued pursuant to those instructions.

This Court's previous order failed to adequately address the conflict of interest on the part of counsel Barnett & Alagia. The District Court has instructed this Court to explain in detail the basis of the conflict of interest, the harm inflicted on the estate, and the reason the Court considered the conflict of interest in reducing the attorneys' fee award.

The Bankruptcy Court has the independent responsibility to investigate the reasonableness of compensation, even in the absence of an objection by a party in interest. Bankruptcy Rule of Procedure 2016(a); *In re Four Star Terminals, Inc.,* 42 B.R. 419 (Bkrtcy.D.Alaska) *In re Malden Mills, Inc.,* 42 B.R. 476 (Bkrtcy.D. Mass.1984); *In re Thomas, Inc.,* 43 B.R. 510 (Bkrtcy.D.Mass.1984).

The total fee and expense request of debtors' counsel, Barnett & Alagia, to date is $161,055.65. The total fee and expense request for co-counsel, Mitchell, Williams, Selig, Jackson & Tucker (Mitchell Law Firm), is $73,096.87. On January 7, 1986, this Court entered an Order sanctioning the Mitchell Law Firm for the conflict of interest by reducing most hourly charges by fifty percent.

The Mitchell Law Firm represented both estates from the filing of the petition on November 15, 1983, until March 1984. In March 1984, the law firm of Barnett & Alagia became associated as co-counsel and took over the principal responsibilities of the case.

On November 15, 1983, the two debtors filed a petition styled N.S. Garrott & Sons and Eastern Arkansas Planting Company, a joint venture, which was assigned Case No. JO 83–214B. Also, N.S. Garrott & Sons filed for bankruptcy relief on November 15, 1983, and was assigned Case No. JO 83–215M. Eastern Arkansas Planting Company filed for bankruptcy relief on the same date and was assigned Case No. JO 83–216M. The joint petition case was dismissed on the motion of the debtors. The first plan of reorganization was denied confirmation in December 1984. *In re N.S. Garrott & Sons,* 48 B.R. 13 (Bkrtcy.E.D. Ark.1984). On March 25, 1985, a third amended plan was confirmed after objections by creditors were satisfied.

N.S. Garrott & Sons and Eastern Arkansas Planting Company are Arkansas general partnerships; each is engaged in the business of farming. N.S. Garrott, Jr., and James L. Garrott are the general partners of N.S. Garrott & Sons. William Montgomery and J.L. Garrott, Jr., are the general partners of Eastern Arkansas Planting Company.

The partnerships farm together and allocate profits and losses at the end of the farming year on leased land. Each partnership farms land it owns separately. Each partnership owns different assets. While each estate is jointly liable for some debts, each estate has different creditors as well. The District Court recited in its findings of fact that almost all of the liabilities were joint obligations. The District Court was grossly misled in this regard by counsel for debtors, Barnett & Alagia. Separate liability exists in regard to most of the debt in each estate according to the third amended plan, Exhibits 1 and 2, as follows:

| Creditor | Debt | Party Liable |
|---|---|---|
| Federal Land Bank (Louise Farm) | $2,543,787.60 | N.S. Garrott |
| Connecticut Mutual Life Insurance Company | 1,513,151.26 | N.S. Garrott |
| Connecticut General Life Insurance Company | 290,519.98 | Eastern Arkansas |
| Wells Fargo Credit | 2,736,791.00 | Joint |
| John Deere Company | 687,918.33 | N.S. Garrott |
| John Deere Company | 718,224.60 | Eastern Arkansas |
| International Harvester Credit Corporation | 27,574.46 | N.S. Garrott |
| International Harvester Credit Corporation | 21,733.21 | Eastern Arkansas |
| Union Planters National Bank | 250,000.00 | Joint |

| Creditor | Debt | Party Liable |
|---|---|---|
| First Tennessee Bank | $310,000.00 | Eastern Arkansas |
| GMAC | 13,273.00 | N.S. Garrott |
| Southern Cotton Oil | 13,985.75 | N.S. Garrott |
| SBA | 94,215.43 | N.S. Garrott |
| SBA | 303,695.03 | Eastern Arkansas |
| Delta Distributors | 109,255.36 | Eastern Arkansas |
| Delta Distributors | 103,647.50 | N.S. Garrott |
| N.S. Garrott & Sons | 870,506.98 | Eastern Arkansas |
| Evelyn Montgomery | 108,130.74 | Eastern Arkansas |
| Redcliff Investment | 55,000.00 | Joint |
| Total Joint Debt | $3,041,791.00 | |
| Total Separate Debt | $7,442,099.25 | |

The schedules of Eastern Arkansas Planting Company reflect that it is insolvent by $923,966.06. Eastern Arkansas Planting Company owes N.S. Garrott & Sons prepetition $873,781.25 according to the schedules. The schedules of N.S. Garrott & Sons reflect a positive net worth of $1,100,508.14. Included in the assets of N.S. Garrott & Sons is a substantial cash sum held in an escrow which was the subject of an appeal to the Eighth Circuit Court of Appeals.[1]

■ Pursuant to Bankruptcy Rule of Procedure 1015, the two debtors petitioned for a joint administration which was granted by Order dated February 8, 1984. The purpose of a joint administration is to allow pleadings which would likely be filed in duplicate, one in each case, to be filed under one number, JO 83–215, N.S. Garrott & Sons. *See In re N.S. Garrott & Sons*, 48 B.R. 13 (Bkrtcy.E.D.Ark.1984). A joint administration is not, however, the same thing as a substantive consolidation. Whether or not a case is jointly administered has nothing to do with the rights creditors have against each estate, nor the rights and liabilities of one estate to the other. A substantive consolidation means that the assets of the two estates are combined and the liabilities are combined creating, in effect, one debtor. *In re Silver Falls Petroleum Corp.*, 55 B.R. 495 (Bkrtcy.S.D.Ohio 1985); *In re DRW Property Co.*, 54 B.R. 489 (Bkrtcy.N.D.Tex. 1985). The confirmed plan does not substantively consolidate the two cases even though both debtors were proponents of a single plan which governs both cases.

On April 27, 1984, the debtors filed an application to employ Barnett & Alagia *pro hac vice* and submitted an *ex parte* order for the Court's approval. The order which was prepared by Barnett & Alagia recited that Barnett & Alagia held no adverse interest to the estate they were representing. This type of order is routinely approved by the Bankruptcy Court without a hearing. The Court relies on counsel's integrity that they accurately state they represent no adverse interest.

■ A debtor-in-possession is a fiduciary who owes undivided loyalty to the estate. *In re Coastal Equities, Inc.*, 39 B.R. 304 (Bkrtcy.S.D.Cal.1984). In a Chapter 11 case, a debtor in possession is an entity distinct from the debtor. *In re General Coffee Corp.*, 32 B.R. 23 (Bkrtcy.S.D.Fla. 1983). An attorney who represents a debtor-in-possession should not place himself in a position where he may be required to choose between conflicting duties. *Woods v. City National Bank*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940), *reh'g denied*, 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941). In the case of *In re Roberts*, 46 B.R. 815, 826 (Bkrtcy.D.Utah 1985), the Court stated as follows:

> To "hold an adverse interest" means for two or more entities (1) to possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) to possess a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.
>
> ....
>
> To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest. 46 B.R. at 827.

---

**1.** *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985).

11 U.S.C. § 327(c) which governs this case, provides:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

■ Barnett & Alagia simultaneously represent both bankruptcy estates which have conflicting and competing goals and thereby violate 11 U.S.C. § 327(c). This Court's comments in *In re Hoffman*, 53 B.R. 564, 566 (Bkrtcy.W.D.Ark.1985) are applicable here.

> The creditors in each case have an interest in being paid. Where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims, and payment for one group is necessarily at the expense of the other. If counsel were allowed to simultaneously represent both estates, they would have to function as the proponent of the plan in the corporate case and simultaneously pass on the merits of their own plan and of the repayment possibilities on behalf of the estate in Mr. Shackelford's individual case.

Case law interpreting 11 U.S.C. § 327(c) recognizes that attorneys may have conflicts which are technical and nondisqualifying. These nondisqualifying conflicts can occur in connection with bankruptcy cases which involve multiple business entities. Typically, the various debtors are controlled by a single entity or person whose financial affairs are so entangled that it is impractical or impossible to administer the debtors' estates separately. *See O.P.M. Leasing Services, Inc.*, 16 B.R. 932 (Bkrtcy.S.D.N.Y.1982); *In re Iorizzo*, 35 B.R. 465 (Bkrtcy.E.D.N.Y.1983); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160 (Bkrtcy.D.Ariz.1984).

In this case, the two estates are separate legal entities whose equity security holders are different individuals. There is not sufficient commingling of the financial affairs of the two debtors to make it impossible or economically impractical to recognize that these are two separate estates. Creditors of the insolvent Eastern Arkansas Planting Company have no legal right to look to the assets of the solvent N.S. Garrott & Sons for payment of their claims. The reverse is also prohibited. A plan like the one confirmed here which proposes to take money from the solvent estate and "loan" part of it to the insolvent estate, contraposes the interests of the two estates.

The fact that all voting creditors in both estates voted for the confirmed plan is support for the proposition that common economic interests were served by the jointly proposed plan. However, under our adversarial system of justice, the conflicting interests which existed in these two cases could not be simultaneously advanced by the same attorneys without compromising the system, despite any argument that correct legal advice was given.

Large Chapter 11 cases frequently suffer from a lack of adversarial interest. When the same attorneys represent two estates which are indebted to each other, the problem is exacerbated. The fee applications of Barnett & Alagia do not allocate claim for services among the two estates and do not identify which estate was responsible for what portion of the requested fee. The attorney for the estate for which no service was rendered had a fiduciary duty to object to the fee request, yet no objection was made here because Barnett & Alagia would have been required to object to their own fee application.

Harm is also illustrated by the treatment of the claim of N.S. Garrott & Sons in the Eastern Arkansas Planting Company case. N.S. Garrott & Sons' unsecured claim is the largest unsecured claim in the Eastern Arkansas Planting Company case. Barnett & Alagia submitted to the Court and caused to be entered an order requiring claims to be filed before September 2, 1984. The bar order applied to both cases. The claim filed by N.S. Garrott & Sons in the Eastern Arkansas Planting Company case was filed untimely. Counsel from Barnett & Alagia acknowledged that the untimely claim was

prepared and filed by their office. The attorney for Eastern Arkansas Planting Company had a clear fiduciary duty to its creditors to object to the untimely claim of N.S. Garrott & Sons. Counsel for Eastern Arkansas Planting Company were not motivated to object to their own filing of the untimely claim of N.S. Garrott & Sons because of their dual representation.

Further, except for the turnover action which was appealed to the Eighth Circuit Court of Appeals, the trustee avoiding powers were not utilized by the debtors to benefit creditors of the estates. Counsel either held the opinion that no cause of action in favor of one estate existed or declined to pursue a cause of action. The judicial system is compromised when the attorneys for the potential defendant are also the potential plaintiff's attorneys. Under these circumstances, it is impossible to exercise independent and unbiased judgment regarding the avoiding powers.

■ Counsel for debtors have a duty to decline employment if a conflict of interest exists. *In re Roberts*, 46 B.R. at 815; *In re Buchanan*, 25 B.R. 162 (Bkrtcy.E.D. Tenn.1982). The existence of a conflict of interest under facts similar to those here have been recognized and condemned in numerous cases. *See In re Roberts*, 46 B.R. at 815; *In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842 (Bkrtcy.W.D.Ky.1983); *In re Coastal Equities, Inc.*, 39 B.R. at 304; *In re Watson Seafood & Poultry Co., Inc.*, 40 B.R. 436 (Bkrtcy.E.D.N.C.1984); *Matter of Barton and Ludwig*, 9 B.R. 222 (Bkrtcy. N.D.Ga.1981); *In re 765 Associates*, 14 B.R. 449 (Bkrtcy.D.Hawaii 1981); *In re Sambo's Restaurants, Inc.*, 20 B.R. 295 (Bkrtcy.C.D.Cal.1982).

In the case of *In re Philadelphia Athletic Club, Inc.*, 38 B.R. 882, 884 (Bkrtcy.E.D. Pa.1984), Judge Goldhaber stated as follows:

It was established at common law by the Seventeenth Century that an attorney must not represent opposing interests. *Shire v. King* Yelverton 32. Anonymous, 7 Modern 47. The usual consequence of violating this principle

has been that the attorney is debarred from receiving any fee. *Silbiger v. Prudence Bonds Corporation*, 180 F.2d 917, 920 (2nd Cir.1950).

The Bankruptcy Code specifically allows the Bankruptcy Court to deny allowance of compensation and reimbursement of expenses to an attorney who represents an interest adverse to the estate. 11 U.S.C. § 328(c). Some courts have denied all compensation of counsel where a conflict exists. *In re 765 Associates, Inc.*, 14 B.R. at 449; *In re Chou-Chen Chemicals, Inc.*, 31 B.R. at 842; *In re Paine*, 14 B.R. 272 (D.C.W.D.Mich.1981); *In re B.E.T. Genetics, Inc.*, 35 B.R. 269 (Bkrtcy.E.D.Cal.1983); *In re Philadelphia Athletic Club*, 38 B.R. at 882; *In re Buchanan*, 25 B.R. at 162; *In re Sambo's Restaurant*, 20 B.R. at 295. Other courts have reduced the award depending upon the circumstances of the case. *In re Haldeman Pipe and Supply Company*, 417 F.2d 1302 (9th Cir.1969); *In re Roberts*, 46 B.R. at 815; *In re Watson Seafood and Poultry Company, Inc.*, 40 B.R. at 436; *Matter of King Resources Co.*, 20 B.R. 191 (D.Colo.1982); *In re Devers*, 33 B.R. 793 (D.D.C.1983), *appeal dismissed*, 729 F.2d 863 (D.C.Cir.1984).

Barnett & Alagia's conflict of interest was one of several reasons why the fee request was reduced. Another reason supporting reduction was that the fee itemization represented exaggerated and untrustworthy charges for the services that were performed. This matter was addressed in this Court's original memorandum opinion. In addition, the expense itemization further illustrates Barnett & Alagia's practice of overcharging creditors of both estates. *See In re Pacific Express, Inc.*, 56 B.R. 859, 13 B.C.D. 1343, 1348 (Bkrtcy.E.D.Cal. 1985) (across-the-board reduction used to correct for "attempted fee gouging"). Counsel refused to fly anything but first class if seats were available because it was the policy of the firm of Barnett & Alagia that partners are entitled to this luxury. Counsel charged creditors for expensive hotel rooms, room service, liquor and lavish meals. Even though Barnett & Alagia are

located in Louisville, Kentucky, some of the charges to the bankruptcy estate are for meals and liquor consumed in Louisville by these attorneys and partners of the debtors. Illustrative of these problems are the following charges:

| Date | Description | Amount |
|---|---|---|
| 6–11–84 | Peabody Hotel—Room One Night—One Person | $107.11 |
| 7–17–84 | Lobby Lounge | 6.00 |
| 9–17–84 | The Butcher Shop | 41.67 |
| 9–19–84 | Peabody Hotel—Room | 128.50 |
| 9–18–84 | Capt. Bilbo's | 42.59 |
| 10–23–84 | Peabody Hotel—One Night | 95.84 |
| 12–14–84 | Pendenin's Club (Louisville) | 10.00 |
| 12–17–84 | Peabody Hotel | 95.84 |
| 2–06–85 | C.H. Hotel (Louisville) | 25.58 |
| 2–13–85 | French Quarter Inn—Bar | 20.50 |
| 6–19–84 | Peabody Hotel—One Night | 95.84 |
| 3–28–84 | Peabody Hotel—One Night | 106.16 |
| 3–28–84 | Lobby Lounge | 3.25 |
| 3–28–84 | Peabody Hotel—One Night | 106.16 |
| 4–03–84 | Lobby Lounge | 10.75 |
| 4–03–84 | KUY 25 (Louisville) | 12.72 |
| 4–08–84 | Budget Rent-a-Car (Louisville) | 206.89 |
| 4–08–84 | Peabody Hotel—One Night | 129.00 |
| 4–08–84 | Room Service | 9.67 |
| 4–08–84 | Lobby Lounge | 2.00 |
| 4–09–84 | Room Service | 12.06 |
| 4–09–84 | Lobby Lounge | 5.00 |
| 4–10–84 | Room Service | 17.34 |
| 4–21–84 | Hasenours (Louisville) | 34.61 |
| 4–26–84 | Room Service | 10.25 |
| 5–14–84 | Peabody Hotel—One Night | 107.11 |
| 5–14–84 | Room Service | 12.59 |
| 5–23–84 | Cash Restaurant (Louisville) | 160.33 |

Subsequent to the remand, the debtors have filed a motion to dismiss their cases because they are unable to consummate the confirmed plan. At the hearing on the motion to dismiss, the debtors offered testimony that no money had been paid to creditors as proposed in the confirmed plan and that no equity for unsecured creditors now exists in either estate.

2. The Court allowed additional requests of Barnett & Alagia in the following amounts:

| Date | Fees and Expenses |
|---|---|
| 10/07/85 | 19,374.37 |
| 10/07/85 | 3,641.22 |
| 12/09/85 | 3,419.40 |
| | $26,434.99 Total |

The Court allowed fees to the Mitchell Law Firm in the following amounts:

The Court has reconsidered the fee request, and respectfully adheres to its original decision that this fee request should be limited to $60,000.00.[2]

IT IS SO ORDERED.

| Date | Fees and Expenses | |
|---|---|---|
| | N.S. Garrott | Eastern Arkansas Planting |
| 11/28/84 | $ 972.87 | —— |
| 1/07/85 | 24,438.41 | $24,130.66 |
| | $25,411.28 | $24,130.66 |
| | $49,541.94 Total | |

If Barnett & Alagia's present request is limited to $60,000.00, the total allowed fees and ex-

penses to Barnett & Alagia and the Mitchell Law    Firm would equal $135,976.93.